UNITED STATES of America,
Plaintiff–Appellee,

v.

Van Scott KEITH, Defendant–Appellant.

No. 94–5147.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1994.

Decided Dec. 21, 1994.

**ARGUED:** Oldric Joseph LaBell, Jr., Newport News, VA, for appellant. Alan Mark Salsbury, Asst. U.S. Atty., Norfolk, VA, for appellee. **ON BRIEF:** Helen F. Fahey, U.S. Atty., Norfolk, VA, for appellee.

Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.

Affirmed by published opinion, Judge HAMILTON wrote the opinion, in which Judge WILKINS and Judge LUTTIG joined.

## OPINION

HAMILTON, Circuit Judge: .

Appellant, Van Scott Keith, was convicted by a jury of three counts of mail fraud, 18 U.S.C. §§ 1341 and 2, and sentenced to a term of imprisonment of 21 months. On appeal, Keith contends that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated and that the district court erred when it enhanced his offense level by two levels for obstruction of justice, United States Sentencing Commission, *Guidelines Manual*, § 3C1.1. For the reasons that follow, we affirm the judgment of the district court.

I

On September 24, 1990, Keith reported to his automobile insurance carrier, Nationwide Mutual Insurance Company (Nationwide), that he had been injured on September 9, 1990, when his wife accidentally ran into him in his driveway in a pickup truck he had purchased from his father on September 1, 1990. Although the pickup truck was not listed on Keith's Nationwide policy, a policy

provision covered newly purchased vehicles if the insured reported their purchase within thirty days. Keith eventually received $22,525.14 from Nationwide. Of this amount, $5,000 represented payments under the policy's medical payments coverage to which Keith was entitled irrespective of who owned the pickup truck.

There was no dispute that the accident occurred or that Keith was injured; however, it was demonstrated at trial that Keith had not actually purchased the vehicle from his father as he reported to Nationwide. In fact, while he was pursuing his claim with Nationwide, he was also pursuing a claim with his father's insurance carrier, Allstate Insurance Company, reporting to that carrier that his father owned the pickup truck.

On July 12, 1993, a grand jury sitting in the Eastern District of Virginia indicted Keith on seven counts of mail fraud, 18 U.S.C. §§ 1341 and 2, arising out of his use of the mail to defraud Nationwide. On August 2, 1993, Keith initially appeared before a magistrate judge. At that time, the magistrate judge continued Keith's arraignment to August 19, 1993, in order to permit Keith to obtain counsel, finding that the ends of justice were served by the continuance.

On August 19, 1993, Keith had still failed to obtain counsel. At that time, the magistrate judge appointed counsel, Keith pleaded not guilty, and trial was scheduled for October 27, 1993. Several days before the scheduled trial, the Assistant United States Attorney responsible for Keith's prosecution became ill. The Assistant United States Attorney contacted defense counsel, who agreed to a continuance. Judge MacKenzie granted the government's motion for a continuance orally and then entered a written order stating:

> Upon motion of the United States of America and with the concurrence of the defendant, it is hereby ordered that the trial of this case be continued to November 15, 1993, due to illness of counsel for the United States.

(J.A. 40). Notably, this order was signed by defense counsel as "[s]een and agreed." *Id.*

On November 15, 1993, the case was called for trial before Judge Payne. At that time, Keith moved for dismissal of the indictment, claiming a violation of the Speedy Trial Act, 18 U.S.C. § 3161. Keith asserted that the period of time covered by the continuance of the trial date was not properly excludable because Judge MacKenzie had not made a finding that the ends of justice were served by the continuance. The Assistant United States Attorney then explained to Judge Payne what had occurred, and defense counsel agreed, specifically noting that Keith had not been prejudiced by the delay. Judge Payne then made a finding that the continuance did serve the ends of justice and denied Keith's motion for dismissal.

A jury convicted Keith of three of the seven mail fraud counts contained in the indictment. He was sentenced to 21 months' imprisonment. Keith appeals.

## II

Keith asserts that because his November 15, 1993 trial occurred after the seventy-day mandate of the Speedy Trial Act, his Speedy Trial Act rights were violated. *See* 18 U.S.C. § 3161(c)(1). He contends that the latest day his trial could have commenced was October 28, 1993, seventy days after August 19, 1993, the day when the magistrate judge appointed counsel. Keith's argument is premised on the fact that the period of time covered by the continuance obtained on the government's motion (seventeen days) was not excludable. The government counters by asserting that the time at issue was excludable under 18 U.S.C. § 3161(h)(8)(A).

We review the legal standards applied by the district court in making its ends of justice determination *de novo* and review the district court's findings under the Speedy Trial Act (the Speedy Trial Act or the Act), 18 U.S.C. § 3161, under the clearly erroneous standard. *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984).

Under the Act, the trial of a criminal defendant must "commence within seventy days from the filing date ... of the ... indictment, or from the date the defendant has appeared before a judicial officer of the

court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act enumerates certain exceptions to the rule and excludes, among others, the period of delay:

> resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A).[1]

Accordingly, a period of delay is excludable under § 3161(h)(8)(A) only "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Notably, § 3161(h)(8)(A) does not specify at what point in time an ends of justice finding must be made, but we have made clear that the district court may not grant an ends of justice continuance *nunc pro tunc. See United States v. Carey,* 746

F.2d 228, 230 (4th Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). However, a court may enter its ends of justice finding after it grants the continuance, "sometimes as late as the filing of the defendant's motion to dismiss on Speedy Trial Act grounds," if it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance. *United States v. Doran,* 882 F.2d 1511, 1516 (10th Cir.1989); *see also United States v. Tunnessen,* 763 F.2d 74, 76 (2d Cir.1985); *United States v. Crane,* 776 F.2d 600, 606–07 (6th Cir.1985); *United States v. Bryant,* 726 F.2d 510, 511 (9th Cir.1984); *United States v. Elkins,* 795 F.2d 919, 924 (11th Cir.), *cert. denied,* 479 U.S. 952, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986); *United States v. Edwards,* 627 F.2d 460, 461 (D.C.Cir.), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). In other words, "if findings are entered ex post facto, it must be clear from the record 'that [the court] did consider the factors identified by the statute when it granted the continuance.'" *Doran,* 882 F.2d at 1517 (quoting *Elkins,* 795 F.2d at 924); *see also Frey,* 735 F.2d at 353 ("district court erred by making *nunc pro tunc* findings to accommodate its unwitting violation of the Act"). The reasoning behind such an approach is clear:

> Unless it is clear from the record that the trial court struck the proper balance when it granted the continuance, the twin purposes of the record requirement will be ill-served. The trial court will not focus properly on the correct balancing at the time the continuance is granted, and the

---

1. Section 3161(h)(8)(B) enumerates a list of factors which a court must consider in determining whether to grant a continuance under the ends of justice exception. Those factors are:

   (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice[;]

   (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section[;]

   (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex[;]

   (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

appellate court will have to settle for reviewing retroactive rationalizations instead of contemporaneous reasoning. Allowing the granting of an ends-of-justice continuance to take place outside the boundaries discussed above also invites much wider use of this procedural device than Congress intended.

*Doran,* 882 F.2d at 1516; *see also Tunnessen,* 763 F.2d at 77 (Because "Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.").

Judge MacKenzie orally granted the government's motion for a continuance and subsequently entered a written order, noting that the continuance was granted on account of the Assistant United States Attorney's illness and that Keith agreed to the continuance. Judge MacKenzie did not state any statutory provision of the Speedy Trial Act in his order. At trial, in response to Keith's motion to dismiss, Judge Payne stated the ends of justice served by the continuance outweighed the best interest of the public and Keith in a speedy trial.

■ In our view, it is clear that Judge MacKenzie's order did not meet the procedural requirements of § 3161(h)(8)(A). While it is true that Judge MacKenzie states a reason for granting the government's motion for a continuance in his written order— the illness of counsel for the government—it does not refer to the Act, let alone the ends of justice section of the Act. Furthermore, it is also unclear whether the district court conducted the necessary balancing as required by § 3161(h)(8)(A) when it granted the government's motion for a continuance. Under such circumstances, we cannot conclude that Judge MacKenzie's order met the technical procedural requirements of § 3161(h)(8)(A).

■ It is also clear that Judge Payne's actions did not cure the deficiencies of Judge MacKenzie's order. As noted above, it is unclear whether Judge MacKenzie performed the necessary weighing as required by § 3161(h)(8)(A) at the time he granted the government's motion for a continuance. That being the case, we cannot conclude that the procedural requirements of § 3161(h)(8)(A) were met because it must be clear from the record that the judge granting the continuance conducted the mandatory balancing contemporaneously with the granting of such continuance. *Doran,* 882 F.2d at 1516; *Tunnessen,* 763 F.2d at 76.

■ We are left then with the question of whether Keith can take advantage of the delay caused by the continuance. In general, a defendant cannot waive his right to a speedy trial under the Act. *United States v. Kucik,* 909 F.2d 206, 210–11 & n. 4 (7th Cir.1990), *cert. denied,* 498 U.S. 1070, 111 S.Ct. 791, 112 L.Ed.2d 853 (1991); *see also United States v. Willis,* 958 F.2d 60, 63 (5th Cir.1992); *United States v. Berberian,* 851 F.2d 236, 239 (9th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *United States v. Ray,* 768 F.2d 991, 998 n. 11 (8th Cir.1985); *United States v. Pringle,* 751 F.2d 419, 434–35 (1st Cir.1984); *United States v. Carrasquillo,* 667 F.2d 382, 388–90 (3d Cir.1981).[2] The reasoning behind this general rule rests on the notion that a defendant cannot waive the public's interest in a speedy trial. *See Willis,* 958 F.2d at 63 ("Allowing the defendant to waive the Act's provisions would compromise the public interest in speedy justice.... The Act's central intent to protect society's interests requires that a defendant's purported waiver of his rights under the Act be ineffective to stop the speedy trial clock from running.").

Despite the apparent breadth of this categorical rule, numerous courts have created an exception to it, essentially preventing a defendant from taking advantage of the discrete period of time covered by a continuance occasioned by a defendant's consent and/or waiver. *See, e.g. Kucik,* 909 F.2d at 211 (defendant may not rely on period covered

---

2. This type of waiver must be distinguished from the one provision of the Act that permits a waiver. *See* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty ... shall constitute a waiver of the right to dismissal under this section.").

by a continuance for a dismissal where he "actively participate[d]" in obtaining the continuance); *Pringle*, 751 F.2d at 434 (where waiver caused or contributed to the delay, defendant cannot take advantage of that time in seeking a dismissal); *see also Willis*, 958 F.2d at 64 (noting that "dismissal of an indictment is inappropriate when a defendant requests a continuance under erroneous interpretation or application of one of the Act's provisions and the district court simply errs in its application of the Act to the defendant's request."). The underlying fabric of these decisions is that a defendant should be prevented from using the Act as a sword and a shield; sandbagging the court and the government by agreeing to a continuance and then later urging a dismissal using the time covered by the continuance. As the court in *Pringle* noted:

> If we were to find that the delay caused by the waiver did not stop the speedy trial clock, then we would be rewarding the defendants by enhancing their chances of dismissal. In essence, defendants would have successfully worked both sides of the street, lulling the court and prosecution into a false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal.

*Pringle*, 751 F.2d at 434.

The courts, however, differ as to when a defendant is precluded from taking advantage of the time covered by a continuance that is occasioned by a defendant's consent and/or waiver. For example, *Kucik* and *Pringle* seem to have adopted a broad principle that a defendant's participation in a request for a continuance prevents him from relying on that period covered by the continuance in obtaining a dismissal. *Kucik*, 909 F.2d at 211; *Pringle*, 751 F.2d at 434. In contrast, the court in *Willis* rejected the breadth of *Kucik* and *Pringle*, noting that a defendant's mere "request for or acquiescence in a continuance" does not prevent the defendant from using that time for dismissal. *Willis*, 958 F.2d at 64. Rather, a defendant cannot make use of the discrete period of time covered by a continuance unless the "defendant requests a continuance under an

erroneous interpretation or application of one of the Act's provisions and the district court simply errs in its application of the Act to the defendant's request." *Id.* The court in *Willis* reasoned: "Our holding that the provisions of the Act are non-waivable would be meaningless if we adopted the rule that the defendant waives his ability to move for dismissal of the indictment simply by asking for or agreeing to a continuance." *Id.* Finally, the court in *Willis* noted that dismissal would be appropriate "where the district court grants a continuance based solely upon a defendant's 'waiver' without identifying an applicable exception or performing an ends of justice analysis under § 3161(h)(8)." *Id.*

With the benefit of these decisions, we believe that the court in *Willis* was correct when it noted that the non-waiver rule would be meaningless if a defendant who simply requests or acquiesces to a continuance is consequently precluded from using that period of time covered by the continuance in seeking dismissal under the Act. Accordingly, while we agree with much of the reasoning of *Pringle* and *Kucik*, we decline to embrace the broad principle established in those cases because to hold otherwise would allow the narrow exception to swallow the rule. Moreover, the broad principle as adopted in *Pringle* and *Kucik* would appear to find a waiver when a defendant consents to a continuance occasioned on *any* reason, including the district judge's desire to go fishing. Such an approach is clearly inconsistent with the Act. As the court in *Willis* explained:

> It is the responsibility of the district court to ensure that a request for a continuance in a criminal case which threatens to delay trial past the 70–day mark falls within one of the Act's exceptions. Congress's intent in providing for the dismissal sanction was "to serve as a deterrent for the failure of the United States Attorney *or the court* to comply with the Act."

*Willis*, 958 F.2d at 64 (quoting *Pringle*, 751 F.2d at 434). However, we also believe the rule formulated in *Willis* is too narrow because we believe that dismissal is not always mandated when the district court fails, in granting the continuance, to identify a

section of the Act or to perform an ends of justice analysis, and also because we believe the rule permitting an exception to the non-waiver principle should not be limited to situations when it is the defendant who requests the continuance.

■ Rather, the appropriate inquiry, in our view, is whether, after a careful review of the record in its entirety, the reasons underlying the district court's granting of the continuance, *as agreed to by the defendant,* set forth a sufficient factual basis which would support an ends of justice finding under the Act. If the underlying reasons for the granting of the continuance, as agreed to by the defendant, support an ends of justice finding under the Act, the defendant should not be at liberty to take advantage of that discrete period of time covered by the continuance. If not, the defendant should be entitled to use that time to obtain a dismissal under the Act. In our view, such an approach clearly serves the interests of the public and the defendant in a speedy trial, and is faithful to the mandate of Congress that courts assume part of the responsibility in strictly complying with the Act. Accordingly, we hold that if a defendant affirmatively consents to a motion for a continuance and the reasons for the granting of that motion as garnered from the record are sufficient to support a finding that the ends of justice would be met by granting the motion, the defendant cannot take advantage of that discrete period of time covered by the continuance in asserting a violation of the Speedy Trial Act.

■ In this case, it is clear, and not disputed, that Keith affirmatively agreed to the government's motion for a continuance due to the illness of counsel for the government. It is also clear from the record, as Keith concedes, that the reason the district court granted the motion (the illness of counsel for the government) justified an ends of justice finding under § 3161(h)(8)(A). Therefore, we believe that Keith cannot take advantage of that seventeen-day discrete period of time covered by the continuance granted on the government's motion in asserting a violation of the Speedy Trial Act. Because Keith cannot take advantage of this

time, his trial commenced before the running of the speedy trial clock.

### III

■ Keith also contends that the district court erred when it enhanced his offense level by two levels for obstruction of justice. The Sentencing Guidelines provide:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. When a defendant objects to an increase in his offense level for obstruction of justice for perjury, the district court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or attempt to do the same, under the perjury definition [set out by the court]." *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993). The Court in *Dunnigan* defined perjury as the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at ——, 113 S.Ct. at 1116.

■ At trial, Keith testified that he was the owner of the pickup truck and that he had not reported his ownership of the vehicle with the intent to defraud Nationwide. The government introduced evidence establishing that the vehicle was not owned by Keith, but rather by his father. At sentencing, the district court made a factual finding that Keith had perjured himself in his trial testimony:

> I find with respect to the obstruction of justice that Mr. Keith was *testifying under oath*[,] that at the time he gave false testimony concerning a material matter, in particular the ownership of the car, the general nature of his conduct and intent[,] and that his testimony was given with the willful intent to provide the false testimony rather than as a result of any confusion or mistake or accident or a faulty memory[;] and therefore the two-point enhancement

for obstruction of justice has been established by a preponderance of the evidence. (J.A. 169–70).

It is clear that there was a sufficient basis in the record for the district court to conclude that Keith gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1116. Accordingly, the district court did not err in enhancing Keith's offense level by two levels for obstruction of justice. U.S.S.G. § 3C1.1.

### IV

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED.*