**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 94-5874

IVAN JULIAN STEVENSON, a/k/a Issac,
a/k/a Ike,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 94-5875

MAURICE EDWARD JACKSON, a/k/a
Moe,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 94-5876

REGINALD DAVIS, a/k/a Reggie, a/k/a
Sinbad,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James H. Michael, Jr., Senior District Judge.
(CR-93-25)

Argued: October 31, 1995

Decided: February 5, 1996

Before HALL and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hugh David O'Donnell, GREEN & O'DONNELL, Harrisonburg, Virginia; Glenn M. Hodge, WHARTON, ALDHIZER & WEAVER, P.L.C., Harrisonburg, Virginia, for Appellants. Stephen Urban Baer, United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** William J. Rogers, Sr., Staunton, Virginia, for Appellant Davis. Thomas J. Bondurant, Jr., Assistant United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After a joint trial, a jury convicted Ivan Julian Stevenson, Reginald Davis (R. Davis), and Maurice Edward Jackson of conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846. The jury also convicted Stevenson and R. Davis of drug murder, 21 U.S.C. § 848(e)(1)(A), and as accessories after the fact, 18 U.S.C. §§ 3, 2. On appeal from judgments entered on the verdicts of

2

the jury, Stevenson and R. Davis contend that the court erred by not granting their motions for severance; that the evidence was insufficient to support their convictions for murder; that the court violated their right to compulsory process; and that they were entitled to downward departures under the sentencing guidelines. Jackson claims that the court erred by denying his motions for severance and for dismissal under the Speedy Trial Act. He also alleges that there was insufficient evidence to convict him of conspiracy and that an in-court identification should have been suppressed. Finally, Stevenson, R. Davis, and Jackson contend that the court abused its discretion by denying their motions for a mistrial based on third-party contact with potential jurors. Finding no error, we affirm.

I

Beginning in the summer of 1991, a drug organization led by Mark Anthony Davis (M. Davis) transported approximately 125 grams of crack cocaine from Washington, D.C., and New York, New York, to Front Royal, Virginia, every two to three weeks. Dealers associated with the organization, including Isaac Stevenson, Maurice Jackson, Cecil Browning, and R. Davis, the brother of M. Davis, sold the drugs in the Front Royal area.

Several witnesses linked the three defendants with M. Davis's drug organization. Greg Browning testified that the three men had traveled to New York with Cecil, Browning's brother, to purchase crack. Other witnesses testified that they had purchased crack from Stevenson and R. Davis and that they had seen Jackson selling drugs and in possession of more than personal use quantities of cocaine. In addition, in a statement to the police, Jackson admitted to hustling crack. Another witness testified that M. Davis had stated that all three defendants were responsible for "tak[ing] care of what he [M. Davis] wanted."

Stevenson also acted as M. Davis's enforcer or second in command, using threats and intimidation to collect debts and maintain discipline within the drug organization. In Front Royal in October 1992, Stevenson hit Cecil Browning's kneecap with the blunt end of a fireman's axe, necessitating a trip to the hospital. A witness had heard

3

Stevenson say that he had come to Front Royal to take care of business for M. Davis.

By late November 1992, Cecil Browning had fallen behind in his drug payments to M. Davis. On November 12, 1992, a witness heard Stevenson tell Cecil, using an obscenity, that he better have the money tomorrow. R. Davis then told Cecil, using an obscenity, that if he did not, R. Davis would shoot him. This conversation took place in front of a Front Royal house known as an open-air drug market. On the same day, another witness saw R. Davis stabbing a chair with a knife, saying "somebody getting this."

On the afternoon of November 13, Cecil Browning checked into room 208 of the Scottish Inn Motel in Front Royal. He was accompanied by Avis Rochelle Aylor. Later that day, witnesses saw R. Davis and Cecil involved in an argument. There was additional testimony that Cecil had complained about Stevenson poking him with a knife.

That evening Stevenson, Jackson, R. Davis, and Cecil went back to room 208 to watch television. After failing to find an acceptable program, Jackson left to spend the night with Rita Mahoney at a nearby motel. Mahoney testified that Jackson remained with her until 3 or 3:30 a.m.

At about 12:30 a.m., Cecil left Stevenson and R. Davis and registered for another room at the Scottish Inn, room 209. Around 2:30 a.m., guests in the rooms below room 209 heard loud thumps coming from above within seconds of each other. A guest then heard someone scream: "Let's get out of here, let's go."

About the same time, Stevenson and R. Davis started looking for Jackson so that they could leave town. After finding Jackson, the three men drove to Washington, D.C., sometime during the early morning hours of November 14.

The bodies of Cecil Browning and Avis Rochelle Aylor were found in room 209 at about 8 a.m. on November 14. Cecil had been shot near the entrance to the room, and Rochelle was found in the bathtub.

Evidence introduced at trial indicated that someone wearing K-swiss type sneakers had kicked in the door to room 209. An imprint from a K-swiss type sneaker was found in the bathroom. Stevenson wore K-swiss type sneakers. In addition, Stevenson's palm print was on the outside of room 209's door.

At trial, a witness testified that he had heard Stevenson admit that "he went in there, boom, boom, boom, and threw the bitch in the tub." The witness testified further that R. Davis had heard Stevenson's statement and had told him to be quiet. Another witness stated that Stevenson had claimed that Jackson had shot Cecil. The same witness testified that Stevenson had admitted telling Jackson to kill Rochelle Aylor in order to prevent her from implicating Jackson. Other witnesses contradicted this testimony.

II

By definition, conspiracy requires a court to consider evidence implicating more than one individual. Each conspirator is responsible for the actions of his coconspirators that are in furtherance of the conspiracy. Often, the conspiracy will also encompass more than one offense. As a consequence, joining coconspirators and charged offenses pertaining to the conspiracy in the same trial is preferred. Zafiro v. United States, 113 S.Ct. 933, 937 (1993).

We have held that "[t]he grant or denial of a motion for severance . . . is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion." United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989).

Stevenson and R. Davis argue that the denial of a severance prejudiced them because the jury was incapable of differentiating between charges of murder and a charge of conspiracy. They claim that it is "easier" for a jury to find a defendant guilty of conspiracy, and once a defendant is tainted with guilt, it is a simple matter for a jury to take the next step and hand down a guilty verdict for murder as well.

Aside from their concern about a jury's thought processes, they cite no support for this contention. We find nothing in the record to sug-

gest that the jury did not weigh the evidence or perform its function in a conscientious and fair manner. In addition, the evidence relating to the murders was inextricably intertwined with the drug conspiracy evidence. Even in separate trials, evidence pertaining to the conspiracy would have been admissible to prove the motive for murder. Fed. R. Evid. 401, 402, 404(b). Similarly, evidence of the murders would have been admissible in a trial for conspiracy as overt acts in furtherance of the conspiracy. We hold that the court did not abuse its discretion by denying the defendants' motions for severance of offenses. See United States v. Clark, 928 F.2d 639, 644-45 (4th Cir. 1991).

Also, Stevenson and R. Davis were not prejudiced by the court's denial of their motions to sever their trial from Jackson's. They contended that Jackson was the murderer, while Jackson maintained his innocence. But the proffer of mutually-antagonistic defenses by codefendants is not per se prejudicial. Zafiro, 113 S. Ct. at 938. Prejudice will arise only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S. Ct. at 938.

Under the Federal Rules of Evidence, the evidence introduced against Jackson that related to the conspiracy would have been admissible in a separate conspiracy trial against Stevenson and R. Davis. Finally, although Stevenson and R. Davis point to the complex nature of the evidence, they cite no specific prejudice. See Zafiro, 113 S. Ct. at 938. After considering the evidence and the record as a whole, we hold that the district court did not abuse its discretion by denying Stevenson's and R. Davis's motions to sever the joinder of the defendants.

III

Jackson alleges that the court's denial of his motion for severance violated his specific right under the Speedy Trial Act, 18 U.S.C. 3161(c)(1). He also claims that a joint trial prevented the jury from making a reliable judgment about guilt or innocence.

A federal grand jury returned an indictment against Jackson and his coconspirators on November 30, 1993. The 70-day speedy trial clock

began running on February 2, 1994. The trial was scheduled to begin on April 4, 1994. At a hearing on March 14, 1994, the government requested a continuance because of the unexpected complexity of the case and because of a recent ice storm that had prevented the government from adequately reviewing discovery. Counsel for Stevenson and R. Davis joined in this request and these two defendants waived their rights under the Speedy Trial Act. Jackson did not sign a waiver and objected to the continuance. On March 21, without making any "ends of justice" findings, the court continued the trial until July 11, 1994. On March 24, the court entered a second order, stating that a continuance would serve the "ends of justice" by giving counsel adequate time to prepare for trial.

Alleging that the continuance violated his right to a speedy trial, Jackson filed a motion to dismiss on July 7, 1994. See 18 U.S.C. § 3161(c)(1). On July 11, Jackson's counsel withdrew the motion after determining that the court's actions satisfied 18 U.S.C. 3161(h)(7). This withdrawal, although not dispositive, is a consideration on appeal. See United States v. Keith, 42 F.3d 234, 238-40 (4th Cir. 1994).

Under 3161(h)(7) of the Act, a continuance granted to one defendant in a joint trial will also apply to codefendants if joinder of the parties was proper and the period of delay was reasonable. United States v. Sarno, 24 F.3d 618, 622 (4th Cir. 1994). Initially we must consider whether the court's grant of a continuance to Jackson's codefendants satisfied the requirements of the Act. We review a district court's legal determinations under the Speedy Trial Act de novo. We apply a clearly erroneous standard to review the court's factual findings. Keith, 42 F.3d at 236.

A court may grant a continuance without running afoul of the Speedy Trial Act if it finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Here, the court did not make the requisite "ends of justice" findings on March 21 when it granted the continuance. But in its March 24 order the court determined that the order furthered the "ends of justice" because "a failure to grant such a continuance would deny counsel for the defendant and the attorney for the Government the reasonable time necessary for

7

effective preparation, taking into account the exercise of due diligence." Cf. 18 U.S.C. § 3161(h)(8)(B)(iv). "Ends of justice" findings made subsequent to the grant of a continuance satisfy the Act if it is clear from the record that at the time it granted the original continuance order the court weighed the need for a continuance against the defendant's and the public's interest in a speedy trial. Keith, 42 F.3d at 237-38. We conclude that the record as a whole demonstrates that the court conducted the necessary balancing test. See United States v. Jean, 25 F.3d 588, 594-95 (7th Cir. 1994).

Because the continuance was proper, we next consider whether the court abused its discretion by denying Jackson's motion for severance. Stevenson, R. Davis, and Jackson shared equivalent degrees of culpability for the actions taken in furtherance of the drug conspiracy. The connected nature of the evidence, along with the preference for joint trials in conspiracy cases, justified the court's decision. Further, section 3161(h)(7) was enacted "to make it absolutely clear that Congress did not intend to alter the traditional rules of severance." United States v. Carey, 746 F.2d 228, 231 (4th Cir. 1984) (citation omitted). We hold, therefore, that severance was not required.

The continuance granted to his codefendants was applicable to Jackson if the delay of 48 days was reasonable. Due to the complex nature of the case, the number of defendants, and the fact that Jackson has not cited any concrete harm that resulted from the continuance, we hold that the delay was reasonable. See United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995).

IV

Stevenson and R. Davis next attack the sufficiency of the evidence supporting their convictions for murder and aiding and abetting. Jackson appeals the sufficiency of the evidence linking him to the conspiracy, claiming that the testimony of Gregory Browning, the brother of one of the murder victims, was "inherently incredible."

When considering the sufficiency of the evidence, we do not evaluate the credibility of witnesses. Reavis, 48 F.3d at 771. Furthermore, aside from the testimony of Browning, the government introduced the testimony of numerous other witnesses who implicated Jackson in the

drug conspiracy led by M. Davis. Viewing the evidence and drawing all inferences in the light most favorable to the government, we hold that the evidence was sufficient to support Stevenson's and R. Davis's convictions and Jackson's conviction for conspiracy. See Glasser v. United States, 315 U.S. 60, 80 (1942).

Jackson also claims that Browning's in-court identification of Jackson should have been suppressed because Browning might have seen the defendants in the courtroom prior to testifying. Even if we were to assume, without deciding, that these circumstances resulted in an impermissibly suggestive identification procedure, Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir. 1994), we find no error because the totality of the circumstances "fall far short of the `very substantial likelihood of irreparable misidentification' standard that is required." United States v. Hughes, 716 F.2d 234, 241 (4th Cir. 1983) (citations omitted). Evidence showed that Browning was acquainted with Jackson from drug transactions Jackson made during trips to New York City. See Coleman v. Alabama, 399 U.S. 1, 4-6 (1970) (holding admissible an in-court identification by a witness who had a fleeting but "real good look" at his assailant in the headlights of a passing car). We hold that the court did not err in denying Jackson's motion to strike.

We conclude also that the court did not err by not compelling the attendance of a defense witness, Mark Hoyle. Because Hoyle was a defendant in a current criminal trial in another jurisdiction, he was unavailable. His testimony was presented to the jury by way of a stipulation agreed to by the defense. Under these circumstances, we hold that the court did not violate Stevenson's and R. Davis's rights under the Sixth Amendment.

There is also no merit to the claim raised by all three defendants that the court abused its discretion by not ordering a mistrial. See West, 877 F.2d at 287-88. The defendants' motions for a mistrial were based on allegations by Stevenson's sister that a member of the venire panel and an unidentified juror had heard that two coconspirators, Leroy Patton and M. Davis, had pled guilty to the indictment. Later at trial, the jury heard testimony from Patton that he had pled guilty. Considering the source, the unsubstantiated nature of the allegations, and Patton's testimony about his plea, along with the fact that the

9

overheard information did not relate to the guilt or innocence of the defendants, we conclude that a mistrial was not warranted. See United States v. Crisco, 725 F.2d 1228, 1233 (9th Cir. 1984).

In their final contention on appeal, Stevenson and R. Davis claim that the court committed clear error when it denied their motions for a downward departure under Application Note 1. of Guideline § 2A1.1. A decision not to depart is discretionary unless the district court mistakenly believed that "it lacked the authority to depart." United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990). The record indicates that the court realized it could depart, but chose not to do so after weighing the evidence.

AFFIRMED

10