**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                         No. 95-5355

CHORYA A. STATON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CR-93-49)

Argued: July 9, 1996

Decided: August 16, 1996

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

_____

Remanded for further proceedings by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** James Orlando Broccoletti, ZOBY & BROCCOLETTI,
P.C., Norfolk, Virginia, for Appellant. Arenda L. Wright Allen,
Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The appellant, Chorya Staton, appeals his convictions for attempting to possess cocaine with intent to distribute, see 21 U.S.C. §§ 841(a)(1) and 846, and possession of heroin with intent to distribute, see 21 U.S.C. § 841(a)(1). On appeal, Staton contends that his prosecution violated the Speedy Trial Act (the Act), see 18 U.S.C. §§ 3161-3174. Because the record is unclear as to whether a violation of the Act occurred, we remand for further proceedings.

I

On February 27, 1993, Staton was arrested at a motel as he was about to meet a DEA informant to purchase twenty kilograms of cocaine. Following his arrest, officers searched the bag he carried with him to the motel; during the search, the officers recovered approximately $200,000 in currency. During a later inventory search of an automobile, which Staton had driven to the motel, the officers recovered a loaded firearm under the driver's seat and a quantity of heroin from the trunk.

On March 26, 1993, a federal grand jury sitting in the Eastern District of Virginia returned a three-count indictment against Staton. Count I charged Staton with attempting to possess cocaine with intent to distribute, see 21 U.S.C. §§ 841(a)(1) and 846. Count II charged Staton with possession of heroin with intent to distribute, see 21 U.S.C. § 841(a)(1). Count III charged Staton with using a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. § 924(c)(1).

At Staton's arraignment on April 1, 1993, he entered a plea of not guilty, and the district court scheduled a jury trial for May 17, 1993. During the arraignment, on the government's motion, the district

2

court dismissed Count I of the indictment without prejudice. According to the government, the district court dismissed Count I because the government could not meet its burden of proof at trial--the government did not want to bring the DEA informant, crucial to its proof of Count I, to Norfolk because the informant was involved in an international drug trafficking investigation in New York, and the government wanted to keep the informant's identity hidden.

At trial, after jury selection but before opening statements, Staton filed a motion in limine to prevent the introduction of evidence concerning the events leading up to his arrest for attempted possession of cocaine. He argued that those facts constituted evidence of another crime not related to the charges on which he was to be tried. After considering the government's position that it should be permitted to give the historical background of the case, the district court ruled that the evidence seized pursuant to the arrest was admissible, but any reference to the arrest itself was inadmissible.

Despite this ruling, the Assistant United States Attorney (AUSA) used the word "arrest" ten times during her opening statement, seven of which were specifically in reference to Staton's arrest. After the AUSA's opening statement, the district court granted Staton's motion for a mistrial.

On June 14, 1993, a superseding indictment was filed. The superseding indictment contained all three counts contained in the original indictment--the two charges for which Staton went to trial (Counts II and III) and the cocaine count which had been previously dismissed (Count I). On June 22, 1993, Staton filed a motion to dismiss Counts II and III on the ground that retrial would violate the Double Jeopardy Clause of the Fifth Amendment.

At his arraignment on the superseding indictment on June 16, 1993, Staton pled not guilty to all three counts. The district court scheduled a jury trial for July 21, 1993. On July 6, 1993, the district court held a hearing on Staton's motion to dismiss. In support of his position, Staton noted that immediately after the district court ruled that the government could not refer to his arrest, the AUSA referred to the arrest numerous times in her opening statement. In addition, the government reindicted Staton on all three of the original counts after the

3

mistrial was granted. Further, the AUSA told one of Staton's attorneys that she reindicted Staton in order to get around the district court's ruling that prohibited her from mentioning the arrest, the accuracy of which the AUSA then admitted to the district court.

In response, the AUSA contended that her reference to Staton's arrest in her opening statement was a result of a misunderstanding of the district court's ruling and not an intentional act to provoke a mistrial. The AUSA further represented that she had dropped the cocaine charge initially because the government did not want to compromise the New York investigation and wanted to keep the DEA informant's identity hidden.

Notwithstanding its misgivings regarding the AUSA's conduct, on July 8, 1993, the district court denied Staton's motion to dismiss Counts II and III. In its order, the district court held that the government did not intentionally provoke Staton into requesting a mistrial. The district court noted that in other cases, courts have held that prosecutorial conduct more egregious than that involved in this case did not comprise intentional provocation or goading sufficient to prevent retrial and that even in cases involving flagrant prosecutorial misconduct, courts have ruled that the defendant was not provoked into requesting a mistrial. In contrast, the district court considered the alleged prosecutorial misconduct at issue in this case to be much less severe.

On July 20, 1993, Staton appealed the district court's order to this court. On that same day, the government moved the district court for permission to proceed with the trial on Counts II and III notwithstanding Staton's appeal of the district court's July 8 order. At the hearing on the government's motion, the following exchange took place regarding the disposition of Count I:

> AUSA:  So what happens--do we have a trial tomorrow, or don't we?
>
> THE COURT:  No. It's stayed.
>
> AUSA:  You're staying Count I as well? That's my question, sir.

4

THE COURT: Yes--well, I guess so. I don't think I want to try the case piecemeal.

AUSA: All right. Thank you, Your Honor.

THE COURT: Okay.

AUSA: Your Honor, it might be wise to get on the record what the defendant's position is regarding Count I so he doesn't come back six months from now when we get a ruling from the Fourth Circuit saying, gee, I should have had my trial within the speedy trial deadline on Wednesday, the 21st of June.

THE COURT: I think you are wise in that.

STATON'S COUNSEL: We will waive that part, Your Honor.

THE COURT: Pardon?

STATON'S COUNSEL: We will waive the speedy trial part on Count I.

THE COURT: All right.

(J.A. 56-57).

After the hearing, the district court issued an order denying the government's motion to proceed with the trial. In pertinent part the district court stated in its order:

> [T]he government's motion to proceed with trial is DENIED and trial on all counts is STAYED pending resolution of defendant's double jeopardy appeal.
>
> While trial arguably could proceed on Count I because it is not dependent on the outcome of the double jeopardy

5

appeal, the court is not in favor of expending the additional judicial resources necessary to try these counts piecemeal. Therefore, the Court has stayed trial on all three counts. In that regard, the Court notes for the record that the defendant, by counsel, waived his Speedy Trial rights at today's hearing.

(J.A. 59-60).

On May 31, 1994, we affirmed the district court's order which held that the government had not goaded Staton into moving for a mistrial, see United States v. Staton, No. 93-5561 (4th Cir. May 31, 1994) (unpublished), and our mandate was issued on June 21, 1994, and the mandate was received by the district court on June 23, 1994.

On July 6, 1994, Staton filed a motion in the district court to stay the trial in order to allow him to petition to the United States Supreme Court for a writ of certiorari. Without explanation, the district court granted the motion.[1] Staton filed his petition for writ of certiorari on August 29, 1994, which the Supreme Court subsequently denied on October 11, 1994.

On October 14, 1994, this court received the Supreme Court's order denying Staton's petition for writ of certiorari. On October 17, 1994, the Fourth Circuit clerk's office sent a letter to the clerk of the Eastern District of Virginia, Norfolk Division, which stated that the Supreme Court denied Staton's petition for writ of certiorari on October 11; this letter was received by the district court clerk's office on October 18, but the letter was not docketed. In addition, the record does not reflect whether a copy of the Supreme Court's order was attached to the letter.

_____

[1] Of note, Staton's motion for stay of his trial in order to allow him to file a petition for a writ of certiorari with the Supreme Court stated:

> That the defendant wishes this court to extend the stay previously granted and in doing so does waive any claim to a speedy trial on these charges and consents to a delay in his trial until a ruling by the Supreme Court.

(J.A. 61-62).

On December 14, 1994, the order of the Supreme Court denying Staton's petition for a writ of certiorari was filed in the district court. The copy of the Supreme Court's order filed in the district court reflects a Fourth Circuit "filed" stamp dated October 14, 1994.[2]

On December 16, 1994, a hearing was held setting Staton's trial date for December 27, 1994. On December 19, 1994, Staton filed a motion to dismiss the indictment on the basis that his trial would violate the Act. On December 22, 1994, the district court denied Staton's motion.

On December 27, 1994, the case went to trial. During the course of the trial, the district court granted Staton's motion for judgment of acquittal as to Count III. On December 29, 1994, the jury returned verdicts of guilty on Counts I and II of the superseding indictment. Staton was sentenced to 324 months' imprisonment. In addition, the district court imposed a fine of $225,000. Staton noted a timely appeal.

II

Staton contends that his trial on the charges contained in the superseding indictment violated the Act. To address this argument, we begin with the pertinent provisions of the Act.

Under the Act:

> the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). However, the Act allows for the district court to exclude time from the seventy-day mandate for various reasons.

_____

[2] At oral argument, the AUSA who handled the case below represented that she called the district court clerk's office on December 12 or 13 to inquire about the status of Staton's case.

7

For example, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," see 18 U.S.C. § 3161(h)(1)(F), is excluded.

Under certain circumstances, the seventy-day clock is reset. For example, § 3161(e) provides:

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial . . . , the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal . . . , the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.

The parties have taken the position that the speedy trial clock analysis is different for Counts I and II. We find this odd because the Act does not embrace such a notion. To be sure, the Act does not contemplate splitting multi-count indictments according to the different time frames that the Act would have imposed if single-count indictments had been returned. Indeed, the Act deals with a similar problem, the joinder of defendants in a single trial, by permitting "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). Thus, § 3161(h)(7) makes an exclusion for one defendant applicable to all defendants. This, in effect, simultaneously ends the 70-day period for codefendants. See United States v. Rush, 738 F.2d 497, 503-04 (1st Cir. 1984).

In the context of multiple offenses in a single indictment, we have held that a reasonable period of delay should be excluded for joinder of offenses so as to allow the seventy-day period for all offenses to end simultaneously. See United States v. Carey, 746 F.2d 228, 230-31 (4th Cir. 1984), cert. denied, 470 U.S. 1029 (1985). In Carey, the defendant was arrested on June 8 and charged with possession of cocaine. He was arraigned on June 9 by a magistrate for that charge. On June 22, a grand jury indicted Carey for one count of possession of cocaine and a new charge--distribution of cocaine. On July 1,

8

Carey was arraigned on the two-count indictment. On September 2, Carey moved to dismiss the indictment on Speedy Trial Act grounds. The district court denied the motion and we affirmed. We recognized that if each charge was considered independently the trial of the distribution count was timely but the trial of the possession count was not. Id. at 230. However, we eschewed the notion that the Act contemplates splitting multi-count indictments according to different time frames. We explained:

> In the context of the Speedy Trial Act, joining multiple offenses against a single defendant is analogous to joinder of defendants. Consequently, the same standard for exclusion of delay caused by the joinder should apply. . . .
>
> Interpreting the Act to exclude a reasonable delay in the joinder of counts in order to end the 70-day period simultaneously for all counts preserves the traditional rules of severance in accordance with congressional intent.

746 F.2d at 231. Thus, we held that the Act allows the exclusion of a period of reasonable delay to allow for the joinder of offenses. We went on to find that a delay of nine days was reasonable. Id.

We believe there is nothing in the Act to support the treatment of Counts I and II differently. In general and in practice, the Act contemplates that a defendant should be tried within seventy days after the indictment is filed or the defendant's appearance before a judicial officer, whichever occurs later. 18 U.S.C. § 3161(c)(1). Working within this general time frame, the Act allows for the exclusion of reasonable delays under certain circumstances, e.g., disposition of motions, and anticipates that mistrials will be granted and indictments dismissed, thereby necessitating a trial within prescribed times after the mistrial or reindictment. Thus, the Act contemplates that a defendant will be brought to trial on the charges contained in the indictment in an expeditious manner. That the government later resurrects a previously dismissed charge following the declaration of a mistrial is of no consequence. What is of import is whether the defendant was tried on the charges contained in the indictment within seventy days of the declaration of the mistrial. Interpreting the statute in this manner fur-

9

thers Carey's instruction to interpret the Act to end the clock for each count simultaneously.

In this case, once the mistrial was declared, § 3161(e)(1) mandated that Staton had to be tried within seventy days "from the date the action occasioning the retrial [became] final." The action occasioning retrial was the declaration of the mistrial, and the speedy trial clock began the next day. See United States v. Rivera , 844 F.2d 916, 919 (2d Cir. 1988) (where mistrial is followed by an interlocutory appeal, the action occasioning retrial is the granting of the mistrial).[3]

From May 18 until the issuance of the superseding indictment on June 14, 1993, there was no intervening event with speedy trial clock implications. Thus, as of June 14, twenty-seven days had run.

The speedy trial clock resumed on June 15, 1993. The period between June 15, 1993 and June 21, 1993 (the day before Staton filed motions, including his motion to dismiss) is includable.[4] The period between June 22, 1993 and July 8, 1993 (the day the district court ruled on the motions) is excludable, 18 U.S.C. § 3161(h)(1)(F), but the period between July 9, 1993 and July 19, 1993 (the day before Staton filed his notice of appeal) is includable. Thus, as of July 20, 1993, forty-four days of the speedy trial clock had run.

The parties agree that the period of delay resulting from the interlocutory appeal is excludable under § 3161(h)(1)(E) (excluding "delay resulting from any interlocutory appeal"). Our mandate resolving the appeal was issued on June 21, 1994, and received by the district court

_____

[3] Indeed, without the mistrial, there would have been no retrial.
[4] Although it makes no difference to the outcome of the speedy trial clock calculation, we treat as excludable June 16, the date of Staton's arraignment on the superseding indictment. See United States v. Wright, 990 F.2d 147, 148 (4th Cir.) (day of defendant's initial appearance and day of defendant's preliminary and detention hearing were excludable from thirty-day period between arrest and indictment, 18 U.S.C. § 3161(b), because these dates constituted a "delay resulting from other proceedings concerning the defendant," § 3161(h)(1)), cert. denied, 114 S. Ct. 199 (1993).

on June 23, 1994. The question we must next resolve is when did the speedy trial clock resume.

The Act does not specifically address this issue. However, several courts have addressed a similar issue to that raised here under § 3161(e). Section 3161(e) provides that if"the defendant is to be tried again following an appeal . . . , the trial shall commence within seventy days from the date the action occasioning the retrial becomes final." (emphasis added). And at least two courts have applied § 3161(e) by analogy to determine when the period of delay caused by an interlocutory appeal ends. See Rivera, 844 F.2d at 920-22; United States v. Crooks, 804 F.2d 1441, 1445 (9th Cir. 1986). Under § 3161(e), courts have been confronted with this issue: Following an appeal, does the speedy trial clock resume when the mandate is issued by the appellate court or when it is received by the lower court?

The Second, Third, Fifth, Ninth, Tenth, and District of Columbia Circuits have held that the speedy trial clock resumes when the appellate court issues its mandate. See Rivera, 844 F.2d at 922; United States v. Felton, 811 F.2d 190, 198 (3d Cir.) (en banc), cert. denied, 483 U.S. 1008 (1987); United States v. Kington , 875 F.2d 1091, 1109 (5th Cir. 1989); United States v. Ross, 654 F.2d 612, 616 (9th Cir. 1981), cert. denied, 455 U.S. 926 (1982); United States v. Scalf, 760 F.2d 1057, 1059 (10th Cir. 1985); United States v. Robertson, 810 F.2d 254, 259 & n.6 (D.C. Cir. 1987). The Eighth and Eleventh Circuits have held that the speedy trial clock resumes when the district court receives the mandate. See United States v. Long, 900 F.2d 1270, 1276-77 (8th Cir. 1990); United States v. Lasteed, 832 F.2d 1240, 1243 (11th Cir. 1987), cert. denied, 485 U.S. 1022 (1988). There is conflicting authority in the First Circuit. Compare United States v. Rush, 738 F.2d 497, 509 (1st Cir. 1984), cert. denied, 470 U.S. 1004 (1985) (issuance), with United States v. Ferris , 751 F.2d 436, 438-39 (1st Cir. 1984) (receipt).

We believe the decisions of the Eighth and Eleventh Circuits are more persuasive. As the court in Long observed: "[t]he district court is unable to proceed to trial until it has received the appellate court's mandate." Long, 900 F.2d at 1276. This approach properly examines when the district court can proceed towards trial following appellate intervention. Accordingly, we hold that Staton's speedy trial clock did

11

not resume until our mandate was received by the district court on June 23, 1994.

The period between June 24, 1994 and July 5, 1994 (the day before Staton filed a motion for stay of trial pending action by the Supreme Court on his petition for writ of certiorari) is includable in the speedy trial clock calculation. Accordingly, as of July 6, 1994, fifty-six days had run.

On July 6, 1994, Staton filed a motion for stay of trial pending action by the Supreme Court on his petition for writ of certiorari. The motion was granted on July 7, 1994.

At this point, the speedy trial clock calculation becomes even more complicated. It must be noted that the motion for stay was in effect a motion for continuance of trial--the motion for stay was a request to continue the trial until the Supreme Court ruled on the petition.

The Act excludes the period of delay:

> resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). Accordingly, a period of delay is excludable under § 3161(h)(8)(A) only "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." "Notably, § 3161(h)(8)(A) does not spec-

12

ify at what point in time an ends of justice finding must be made, but we have made clear that the district court may not grant an ends of justice continuance <u>nunc pro tunc</u>." United States v. Keith, 42 F.3d 234, 237 (4th Cir. 1994). The court, however, "may enter its ends of justice finding after it grants the continuance,`sometimes as late as the filing of the defendant's motion to dismiss on Speedy Trial Act grounds,' if it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." <u>Id.</u> (quoting <u>United States v. Doran</u>, 882 F.2d 1511, 1517 (10th Cir. 1989)). In other words, the court may enter its findings <u>ex post facto</u> if it is clear from the record that the court conducted the mandatory balancing of § 3161(h)(8)(A) and considered the factors enumerated in § 3161(h)(8)(B) when it granted the continuance. <u>Id.</u>

It is clear that the district court's order did not meet the requirements of § 3161(h)(8)(A). The district court's order did not state a reason for granting the motion, let alone refer to the Act or the ends of justice section of the Act. And it is equally unclear whether the district court conducted the necessary balancing as required by § 3161(h)(8)(A) or considered the factors enumerated in § 3161(h)(8)(B) when it granted the motion. Under such circumstances, we cannot conclude that the district court's order met the requirements of § 3161(h)(8)(A).

We are left then with the question of whether Staton can take advantage of the delay caused by the granting of the motion for stay. A defendant cannot waive his right to a speedy trial under the Act. <u>See Keith</u>, 42 F.3d at 238. "The reasoning behind this general rule rests on the notion that a defendant cannot waive the public's interest in a speedy trial." <u>Id.</u>

"Despite the apparent breadth of this categorical rule, numerous courts have created an exception to it, essentially preventing a defendant from taking advantage of the discrete period of time covered by a continuance occasioned by a defendant's consent and/or waiver." <u>Id.</u> The reasoning behind this principle is "that a defendant should be prevented from using the Act as a sword and a shield; sandbagging the court and the government by agreeing to a continuance and then later urging a dismissal using the time covered by the continuance." <u>Id.</u> at 239.

13

The inquiry here under <u>Keith</u> is:

>whether, after a careful review of the record in its entirety, the reasons underlying the district court's granting of the continuance, <u>as agreed to by the defendant</u>, set forth a sufficient factual basis which would support an ends of justice finding under the Act. If the underlying reasons for the granting of the continuance, as agreed to by the defendant, support an ends of justice finding under the Act, the defendant should not be at liberty to take advantage of that discrete period of time covered by the continuance. If not, the defendant should be entitled to use that time to obtain a dismissal under the Act.

<u>Id.</u> at 240. This approach "serves the interests of the public and the defendant in a speedy trial, and is faithful to the mandate of Congress that courts assume part of the responsibility in strictly complying with the Act." <u>Id.</u> Accordingly, in <u>Keith</u> , we held that "if a defendant affirmatively consents to a motion for a continuance and the reasons for the granting of that motion as garnered from the record are sufficient to support a finding that the ends of justice would be met by granting the motion, the defendant cannot take advantage of that discrete period of time covered by the continuance in asserting a violation of the Speedy Trial Act." <u>Id.</u>

In this case, it is clear, and not disputed, that Staton affirmatively moved for a continuance. It is also clear that the obvious reason the district court granted the motion was to conserve judicial resources by avoiding potential piecemeal litigation, and this justified an ends of justice finding under § 3161(h)(8)(A). Therefore, Staton cannot take advantage of the period of delay covered by the continuance--that is, the time between the date the district court granted Staton's motion for stay and the date the district court received a copy of the Supreme Court's order denying certiorari. Accordingly, the speedy trial clock resumed on the day following the date the district court received the Supreme Court's order.

We are left with the question of when did the district court receive a copy of the Supreme Court's order? The record is not conclusive on when the district court received the Supreme Court's order. On the

14

one hand, the district court's docket reflects that the order was filed on December 14, 1994. If the speedy trial act clock resumed the following day, Staton's trial was timely. However, the Supreme Court's order reflects the Fourth Circuit's "filed" stamp dated October 14, and it is possible that the Supreme Court's order was received along with the letter sent by the Fourth Circuit clerk's office on October 17. If the district court received the Supreme Court's order on October 18, the same day it received the letter from the Fourth Circuit clerk's office, Staton's trial would be untimely under the Act. Obviously, the district court is in a better position to resolve this factual dispute. Accordingly, we remand the case to the district court to resolve the issue of when the district court received a copy of the Supreme Court's order. The speedy trial clock begins the following day.[5]

III

For the reasons stated herein, the case is remanded to the district court for proceedings consistent with this opinion.

REMANDED FOR FURTHER PROCEEDINGS

_____

[5] We reject Staton's contention that the speedy trial clock resumed on any date earlier than the date the district court received a copy of the Supreme Court's order. In this case, Staton moved to continue his trial until the Supreme Court "rul[ed]" on his petition for writ of certiorari. (J.A. 62). We believe the scope of the continuance as agreed to by Staton ended at the time the district court received a copy of the Supreme Court's order.

15