**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4473

DION ANSARA ADAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-95-16)

Argued: April 10, 1998

Decided: September 3, 1998

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Shanon Stephanie Echols, Charlottesville, Virginia, for
Appellant. Ray B. Fitzgerald, Jr., Assistant United States Attorney,
Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P.
Crouch, Jr., United States Attorney, Charlottesville, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Dion Adams, the defendant, was charged with participation in a drug conspiracy in violation of 21 U.S.C. § 846. Adams was alleged to be a retailer for the drug distribution ring. The initial trial in July of 1995 resulted in certain co-defendants being convicted, other co-defendants being acquitted and no verdict as to Adams or his co-defendant, Sanford Wigenton. A mistrial was declared as to these two co-defendants and their case was scheduled for a new trial in October.

However, on the day that the second trial was to begin, the district court disqualified the attorney representing Wigenton because the attorney was laboring under a potential conflict of interest. The trial was continued until November, but when Wigenton had difficulty obtaining another attorney, the court continued the trial again until December. Further problems caused the case to be continued again and again.

The case finally came to trial on March 11, 1996. The district judge denied certain pre-trial motions; those which have been appealed are discussed below. After a three-day trial, the jury convicted Adams but acquitted Wigenton. Adams's motion for acquittal and objection to his sentence were denied. Adams then brought this appeal. He challenges his conviction and sentence on eight different grounds. Finding no error, we affirm.

I. The District Court was Correct to Deny Adams's Motion to Dismiss his Indictment Pursuant to the Speedy Trial Act.

Adams argues that the district court erred in not dismissing his indictment on Speedy Trial Act grounds, 18 U.S.C.§ 3161. A more specific recitation of the events leading up to Adams's second trial will be helpful.

2

On October 3, 1995, which was to be the eve of Adams's and Wigenton's second trial, the government made a motion to disqualify Wigenton's attorney because of a conflict of interest. The court found that Wigenton could no longer be represented by his attorney, Billy Ponds, because Ponds was also representing another co-defendant from the first trial who had received an offer of sentencing leniency if he would testify against Wigenton. The court therefore disqualified Ponds from representing Wigenton.

Because Wigenton no longer had an attorney, the joint trial of Wigenton and Adams could not commence the next day as had been planned. The court therefore gave Wigenton a week to retain new counsel, noting that if he were unable to do so, he would be assigned an attorney. Taking into consideration the mandatory 30 days which the new counsel would need to prepare for trial, the court scheduled the trial for November 15.

Wigenton was unable to find a satisfactory attorney, however. On November 5, Ponds filed a motion asking the court to reconsider its previous decision disqualifying him from representing Wigenton. After a hearing on November 8, the court denied the motion for reconsideration. Wigenton then asserted that he would get a replacement attorney immediately and would be able to advise the court of his choice within the week. However, to ensure that there would be no further delays, the district court appointed an attorney to represent Wigenton until such time as Wigenton could retain his own attorney. The court explained that the appointed attorney could participate as co-counsel with whomever Wigenton retained as his primary counsel. In this way, the court was able to schedule the trial for as soon as possible after the hearing, taking into account the 30-day period that the appointed attorney would need to prepare. The trial date was reset for December 11.

On November 14, Adams moved to dismiss the indictment for violation of the Speedy Trial Act. If all of the delay due to the continuances were counted, far more than the maximum of 70 days had elapsed since his mistrial. See 18 U.S.C.§ 3161(e). The court denied the motion, however, holding that the period of delay caused by the continuances was excludable from the Speedy Trial Act calculation under 18 U.S.C. § 3161(h)(8). The court found that a failure to have

3

granted the continuances would have made the continuation of the proceeding impossible or have resulted in a miscarriage of justice. Because the time was excludable for Wigenton, it was also excludable for Adams, who was to be jointly tried with Wigenton. See 18 U.S.C. § 3161(h)(7).

Adams appeals the denial of his motion. We review the legal standards applied by the district court de novo and review the district court's findings of fact under the Speedy Trial Act for clear error. See United States v. Keith, 42 F.3d 234, 236 (4th Cir. 1994).

The Speedy Trial Act provides:

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. . . . The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section.

18 U.S.C. § 3161(e). One period of delay which is excluded is that resulting from a continuance, if the judge finds that the ends of justice to be served by the granting of the continuance outweigh the interests of the public and the defendant in a speedy trial. See § 3161(h)(8)(A). However, in order for this period to be excludable, the judge must explicitly make its ends-of-justice determination on the record:

> No such period of delay resulting from a continuance granted by the court in accordance with [§ 3161(h)(8)(A)] shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Id.

The defendant argues that because the judge granted the continuances without explicitly balancing on the record the ends of justice to

4

be served by the continuance against Adams's and the public's interest in a speedy trial, the period of time was not excludable under § 3161(h)(8). It is true that the judge did not explicitly make the findings called for by § 3161(h)(8) at the time he granted the continuance. Not until his ruling on the defendant's motion to dismiss did the judge balance the ends of justice against the interest in a speedy trial. "[T]he district court may not grant an ends of justice continuance nunc pro tunc." Keith, 42 F.3d at 237. If the court had granted the continuance for a reason not acceptable under the Speedy Trial Act, then later engaged in post hoc rationalization in order to avoid a dismissal on Speedy Trial Act grounds, we would not hold such a continuance to have been excludable.

However:

> The retroactive continuances that are forbidden should not be confused with a continuance granted for valid  reasons before the expiration of the allowable time for commencement of the trial and documented by findings of the court after the time has expired. A continuance granted and substantiated under these circumstances validly excludes the time that it encompasses.

United States v. Carey, 746 F.2d 228, 230 n.2 (4th Cir. 1984) (emphasis added). Section 3161(h)(8) "does not specify at what point in time an ends of justice finding must be made." Keith, 42 F.3d at 237. In fact, "a court may enter its ends of justice finding after it grants the continuance, `sometimes as late as the filing of the defendant's motion to dismiss on Speedy Trial Act grounds,' if it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." Id. (quoting United States v. Doran, 882 F.2d 1511, 1516 (10th Cir. 1989)). "In other words, `if findings are entered ex post facto, it must be clear from the record that [the court] did consider the factors identified by the statute when it granted the continuance.'" Id. (quoting Doran, 882 F.2d at 1516 (quoting United States v. Elkins, 795 F.2d 919, 924 (11th Cir. 1986)) (alteration in original)) (internal quotation marks omitted).

That is what happened here: although the district court did not make its findings at the time it granted the continuances, it is clear

from the record that it considered the factors enumerated by the Speedy Trial Act. Section 3161(h)(8)(B) lists "factors, among others, which a judge shall consider in determining whether to grant a continuance" whose delay can be excluded from the Speedy Trial Act calculations. The two factors relevant here are:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> . . .
>
> (iv) Whether the failure to grant such a continuance . . . would deny the defendant reasonable time to obtain counsel . . . or would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Id.

In this case, the court's motivation for postponing the defendants' trial was to allow Wigenton to obtain conflict-free counsel and to give his new attorney an adequate opportunity to prepare for trial. The district court explained, "I certainly don't want to move this thing off [postpone the trial], but I think we've got to do it under the circumstances." Keeping in mind "as its first consideration the rights of [Wigenton] to a fair and unbiased and impartial representation by counsel" and the possibility that something Wigenton said in his trial could affect the sentencing and the appeal of the previously convicted co-defendant whom Ponds was also representing, the district judge concluded that the conflict of interest prohibited Ponds from continuing as an attorney. And clearly the trial could not commence until Wigenton retained a new attorney and that attorney was given at least 30 days to prepare. These record findings are sufficient to indicate that the district judge properly balanced the ends of justice against the best interests of the public and the defendant in a speedy trial when he granted these continuances, even if he did not explain that balancing until the motion to dismiss was filed.

6

II. The District Court Was Correct to Reject the Defendant's
      Challenge to the Jury's Venire.

At trial, the defendant orally objected to the jury venire on the basis that it was under-representative of African-Americans. Adams argued that because the venire was roughly 8% African-American, whereas the general community was approximately 14% African-American, that fact "causes one to pause as to whether or not the process is itself fair and that in itself presents the evidence that would be the good faith basis for a challenge" to the jury venire. The district court over-ruled Adams's objection.

On appeal, Adams argues that the district court violated the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., by over-ruling his objection. Adams asserts that § 1868 of the Act gives him an absolute right to inspect records from the master jury list and that § 1867(f) gives him the right to inspect the contents of records or papers used by the jury commissioner or clerk in connection with the jury selection process. He argues that his motion to review these materials was improperly denied, and that his motion for a hearing on the matter and an opportunity to present evidence should have been granted.

It is true that these statutes give the defendant "essentially an unqualified right to inspect jury lists." Test v. United States, 420 U.S. 28, 30 (1975). However, despite Adams's assertion to the contrary, the record reveals that defendants never made any motion requesting permission to inspect the jury lists.

Instead of requesting to see the jury lists, Adams's attorney merely objected to the make-up of the jury venire in general and requested "the opportunity just to make sure that what Your Honor has stated [about the jury venire being selected randomly and fairly] is in fact the case." Similarly, the co-defendant's attorney only asked "for a hearing on this entire matter and opportunity to request, to produce evidence, investigate and produce evidence with respect to how these lists are brought into being and used in this division." The district court overruled these motions for a general hearing regarding the jury venire. But these motions were not specific enough to notify the dis-

7

trict court that the defendants wished to exercise their rights under § 1867(f).

The defendant plainly did make a motion for a hearing to allow him to present evidence with respect to the jury venire, but that motion was properly denied. Title 28 U.S.C. § 1867(d) provides that if a motion is filed that challenges the court's compliance with jury selection procedures and "contain[s] a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title," then the moving party is entitled to present evidence including the testimony of the jury commissioner or clerk and any relevant records or papers to support his motion. 28 U.S.C. § 1867(d); United States v. Cecil , 836 F.2d 1431, 1451-52 (4th Cir. 1988) (en banc). However, neither the defendant nor co-defendant introduced the necessary sworn statement setting forth any evidence suggesting a violation. Failure to file such a sworn statement requires that the motion be denied.

Without any evidence suggesting that there was a violation of the Jury Selection Act, the objection that the racial makeup of the venire does not match that of the community is insufficient to support a challenge to the venire. As we stated in United States v. Meredith, 824 F.2d 1418 (4th Cir. 1987):

> When the court asked defendants for a specific showing of non-compliance with the Act, defendants stated only that the number of blacks on the jury panel was disproportionately low. The court properly found this fact insufficient to support a challenge to the array. The trial judge emphasized that defendants were not entitled to a specific statistical balance in the jury panel, but only to a jury chosen at random from a representative pool; the administrator and deputy clerk established that the random selection procedure prescribed in the district had been followed.

Id. at 1424 n.3.

In sum, the defendant would have been entitled to inspect the jury lists if he had specifically requested to do so, but he did not. His objection to the jury venire and request for a hearing to present evi-

8

dence as to its disproportionately low percentage of African-Americans was properly dismissed because he did not present a sworn statement alleging facts that, if true, would demonstrate a violation of the Jury Selection and Service Act. His objection to the panel based solely on the under-representation of African-Americans, without more, does not establish any violation.

III. The District Court did not Abuse its Discretion in Denying Adams's Motion to Sever.

On the morning of trial, the government announced that it would call three witnesses whom it had not previously identified, and provided the defense with the criminal histories of those witnesses. The defendants moved to have the witnesses barred from testifying because of the lateness of the notification. The defendants claimed that they would not be prepared for cross-examination of the witnesses because no investigation had been conducted.

In response, the government explained that it made the judgment to withhold the names of these witnesses "until trial seemed imminent" because there had been threats, a beating and fire bombings of other witnesses in the conspiracy prosecution. The government explained that it was out of regard for the safety of the witnesses that it decided to notify the defense of their existence only 24 hours before they were to testify. The government further explained that it did not believe there would be any significant prejudice to the defendants because the witnesses were closely known by them.

The district court acknowledged that it was "keenly aware of the fact that we have had grievous problems concerning the safety of witnesses in this case." It explained that if any of the witnesses were not known to the defendants then the court "want[ed] to know about it," but if they were known then there would be less prejudice to the defense and he would overrule the motion to bar them from testifying.

Adams's attorney confirmed that Adams did know the witnesses. Nevertheless, she objected because the late notification did not give her enough time to prepare to cross-examine the witnesses or to look for other witnesses to testify in rebuttal. However, the district judge was hostile to the idea of another continuance, complaining that "the

9

case has been continued interminably" and he was"just not going to kick this thing around any more."

At that point, Adams's attorney appealed to the court, "Your Honor, if it is a problem with continuing the entire case I could move to sever." The court responded, "No, we are not going to do that either. I overrule your objections."

Because the grant or denial of a motion for severance under Fed. R. Crim. P. 14 lies within the discretion of the trial court, we will overturn the court's decision only where it has clearly abused its discretion. See United States v. Santoni, 585 F.2d 667, 674 (4th Cir. 1978). Adams argues that the court's denial of his motion to sever was an abuse of discretion.

The government does not respond to this argument. Instead, it argues that no motion to sever was ever made, characterizing the above-quoted exchange as an "ambiguous musing." The government's argument is meritless; it is clear from the record that the defendant indicated his intention to make a motion to sever and that the judge denied that motion. To have required Adams's attorney formally to restate a motion that the judge had already denied would be a pointless exercise.

Although a motion to sever was made, the district court did not abuse its discretion in denying that motion. "For reasons of efficiency and judicial economy, courts prefer to try joint-conspirators together." United States v. Ford, 88 F.3d 1350, 1361 (4th Cir.), cert. denied, 117 S. Ct. 496 (1996). To establish that the district court abused its discretion in denying a motion to sever, Adams must demonstrate not only that he was prejudiced, but also that "there[wa]s a serious risk that a joint trial would [have] compromis[ed] a specific trial right . . . or prevent[ed] the jury from making a reliable judgment about guilt or innocence." United States v. Hayden, 85 F.3d 153, 160 (4th Cir. 1996) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)) (certain alteration in original) (internal quotation marks omitted).

The prejudice asserted by Adams here does not meet that standard. Adams claims that if a severance had been granted, he would have had time to investigate the backgrounds of the new witnesses, and

10

would have discovered material to impeach them. This is not the sort of prejudice that invalidates the denial of a motion to sever under Hayden; instead, the prejudice that Adams complains about was a result of the district court's refusal to grant another continuance. Had the court granted the severance but proceeded immediately with Adams's trial, he would still have suffered the same inability to investigate the witnesses. Adams does not allege any prejudice arising directly from his joint trial with Wigenton, and therefore the district court did not abuse its discretion in denying the motion to sever the two trials.

On appeal Adams does not specifically challenge the district court's refusal to grant his motion for a continuance. Perhaps he does not appeal such a denial because his attorney never specifically moved for a continuance, even hypothetically, at the time. However, it is clear that she intended so to move, but that the judge declared his refusal to continue the case. Because that denial is at the heart of Adams's complaint, we address it.

We review a district court's refusal to grant a continuance for an abuse of discretion. See United States v. Jordan , 466 F.2d 99, 101 (4th Cir. 1972). Adams's case is controlled by United States v. Jordan. In that case, the trial court refused to grant a continuance to a defendant who had not been given the names of the witnesses who would testify for the prosecution until the day of trial. We found that this refusal was not an abuse of discretion:

> It is settled in this circuit that "[o]nly in a capital case is the government required to furnish a pretrial list of government witnesses." United States v. Chase, 372 F.2d 453, 466 (4th Cir. 1967); 18 U.S.C. § 3432. The court in its discretion may order the government to produce such a list under Rule 16, Federal Rules of Criminal Procedure, but whether or not it is an abuse of discretion not to do so, and whether it is an abuse of discretion not to grant a continuance once the witnesses' names become known, depends, we think, on whether the denial of such motions amounts to a denial of the defendant's right of confrontation in violation of the Sixth Amendment. We find no such violation here.

11

Id. (alteration in original) (footnote omitted).

In Jordan, we noted that although the defendant did not know the identity of the State's witnesses until the day of trial, the scope of his cross-examination was not in any way curtailed. He knew the substance of what the witnesses would say from his attorney's conversations with the prosecution. Furthermore, although he was not able to bring out any specific information about the offenses in their criminal histories, he was able to impeach their credibility by demonstrating that they were convicted felons. See id. at 102. Any further impeachment on this point, we held, "would have been cumulative." Id.

> Thus, the defendant's complaint boils down to the theory that, if the defense had known the names of the witnesses, or, once having ascertained their names, if a continuance had been granted, it might have been possible to unearth something more with which to discredit their testimony. We recognize that counsel may sometimes need time to investigate witnesses. But on the facts of this case it was not an abuse of discretion to fail to grant a continuance.

Id.

The same can be said of Adams's case. The prejudice that Adams asserts consists mainly of his claim that, had he been given a chance to investigate the witnesses, he could have discovered further convictions for possession of cocaine in their criminal histories. However, under Jordan, this impeachment would have been cumulative because he already had information about much of their criminal histories.

Adams further argues that he was prejudiced because he was unable to discover that the witnesses had entered into agreements with the government in which they would testify in return for favorable consideration in their own cases. Although this is significant prejudice, it is outweighed by the court's concern for the safety of the witnesses. In light of the threats made against witnesses, the fact that one witness was beaten and that another was the victim of arson, the district judge did not abuse his discretion by refusing to continue the trial once the identity of these witnesses was known.

12

In sum, the district court's refusal to sever the trial or grant a continuance was not an abuse of discretion.

IV. The District Court did not Abuse its Discretion in Denying Adams's Motion for a New Trial.

After Adams's conviction, he moved for a new trial, alleging newly discovered impeachment evidence against two government witnesses. The district court properly applied the five part test of United States v. Chavis, 880 F.2d 788 (4th Cir. 1989), to determine whether a new trial should be granted:

> In determining whether a new trial should be granted under Rule 33 of the Federal Rules of Criminal Procedure on the basis of newly discovered evidence, this circuit utilizes a five-part test: (i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial? Unless the answer to each of these inquires is affirmative, a new trial is not appropriate.

Id. at 793 (citation omitted). The court concluded that Adams could not satisfy prongs three or five of this test, and so denied the motion for a new trial. We review the district court's ruling on a motion for a new trial for an abuse of discretion. See United States v. Bynum, 3 F.3d 769, 773 (4th Cir. 1993).

Regarding prong three, the district court noted that"as [Adams's attorney] indicated, the evidence is impeaching, and it is not more than impeaching." On appeal, Adams argues that the third prong of the Chavis test is "invalid" because impeaching information may be just as determinative of guilt or innocence as any other information. However, the great monetary expense, waste of time, expenditure of judicial resources, inconvenience to witnesses required to testify again and undermining of the finality of the trial system caused by the granting of a motion for a new trial are rarely justified unless the new evidence directly suggests that the result of the first trial was incor-

13

rect. In any case, we are bound by the established circuit precedent and may not ignore this prong.

The district court also denied the new trial motion because it found that part five of the test was not satisfied, that is, the newly discovered evidence would not probably result in an acquittal at a new trial. The court found that even if the newly discovered impeachment evidence might have totally destroyed the credibility of the two surprise witnesses "there was still ample evidence before the jury which would support the verdict they returned." In particular, he noted that the evidence provided by an undercover officer and a testifying co-conspirator were particularly strong. On appeal, Adams argues that the court's opinion "concerning the abundance of evidence aside from the witnesses' whose credibility the new evidence would affect, should not be persuasive in that the other testimony was essentially the same as that of the first trial which resulted in a hung verdict." However, even if the first jury could not agree on a verdict based on that evidence, the district court did not abuse its discretion in finding that the evidence was sufficient to support the second jury's verdict.

In sum, the district court did not abuse its discretion in denying Adams's motion for a new trial.

V. The District Court did not Abuse its Discretion in Giving a Jury Instruction on Conspiracies.

Adams does not allege that the jury instructions as a whole did not accurately and fairly state the controlling law. Rather, he argues that a particular instruction "was pure argument and had the effect of reducing the burden of proof of the Government," and that therefore there was more than a reasonable likelihood that the instruction "prejudiced the jury's consideration of the dispositive issue." "The decision of whether to give a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Abbas, 74 F.3d 506, 513 (4th Cir.), cert. denied, 517 U.S. 1229 (1996). Furthermore, even if the use or denial of a jury instruction were in error, we would reverse only if the error were "prejudicial based on a review of the record as a whole." United States v. Ellis, 121 F.3d 908, 923 (4th Cir. 1997), cert. denied , 118 S. Ct. 738 (1998).

14

The contested instruction in this case stated:

> The informal agreement present in conspiracy cases must frequently be proved entirely by circumstantial evidence. The absence of direct proof of an agreement generally results from the secretiveness and complexity of modern day conspiracies, particularly those involving narcotics.

Adams argues that giving the instruction was an abuse of discretion because the citation of authority that accompanied this instruction was not accurate. The government concedes that the two cases cited, "Lynch v. United States, 397 U.S. 1028," and "King v. United States, 402 F.2d 289 (10th Cir. 1968)," are not accurate sources of the instruction. But whether the authority cited for the instruction was incorrect is of little importance; it is the content of the instruction that may have prejudiced the jury and with which we are therefore concerned.

The government argues that the content of the instruction did little more than rephrase well-established conspiracy law. It cites a passage in United States v. Burgos, 94 F.3d 849 (4th Cir. 1996), cert. denied, 117 S. Ct. 1087 (1997), as supporting the statement of law given by the district court:

> By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement. Hence, a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced. Indeed, a conspiracy may be proved wholly by circumstantial evidence.

Id. at 857-58 (citations omitted).

The given instruction goes farther than does this passage from Burgos in describing "the secretiveness and complexity" of modern drug conspiracies as an explanation for the lack of direct proof, and it has a ring of argument to it. We do not endorse the instruction. However, the remainder of the jury instructions properly emphasized that the burden of proving that a conspiracy existed remained with the

15

government. We cannot conclude that this instruction was prejudicial based on a review of the record as a whole.

## VI. The Trial Court's Refusal to Inquire of the Venire Whether They Were More Apt to Believe the Testimony of a Police Officer Than of a Lay Witness was not Plain Error.

Normally we review a district court's refusal to ask a voir dire question for abuse of discretion. See United States v. Barber, 80 F.3d 964, 967 (4th Cir.), cert. denied, 117 S. Ct. 198 (1996). However, in this case Adams did not object to the district court's refusal to ask the requested question. Instead, the defendant's attorney stated:

> Your Honor, I believe there is one other question. You did inquire as to whether or not we had any sort of knowledge or relationship to somebody in law enforcement, etcetera. However, I believe there is another question that the court usually propounds having to do with would you believe testimony of a law enforcement officer.

The court declined to ask any such question, explaining "No, ma'am, I normally do not propound that because that's getting over into the California system." Adams's attorney then responded "I apologize, your Honor." Because no objection was made at the time, Adams has forfeited his right to have us review the district court's refusal for an abuse of discretion.

We may exercise our discretionary remedial power to correct the district court if it committed plain error. See United States v. Childress, 26 F.3d 498, 502 (4th Cir. 1994). But no such error appears here.

Although this Circuit held in United States v. Evans, 917 F.2d 800 (4th Cir. 1990), that the refusal to ask jurors whether they would give more weight to the testimony of a police officer was error, id. at 806, Evans was overruled by our recent opinion in United States v. Lancaster, 96 F.3d 734, 740-42 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 967 (1997). After Lancaster, whether such a question need be asked of the jury venire is committed to the discretion

16

of the trial court. To determine whether the court abused its discretion, we "examine the voir dire as a whole to determine whether it was reasonably sufficient to probe the prospective jurors for bias and partiality." Id. at 742.

The defendant does not argue that the voir dire as a whole was insufficient to probe the prospective jurors for bias. In fact, Adams has included in the record of this case only one page of the transcript of the voir dire, which is certainly not enough for us to determine whether the voir dire was sufficiently searching. We, therefore, cannot conclude that the district court abused its discretion, much less that the error was plain.

VII. The Trial Court did not Err in Refusing to Grant Adams's Motion for Acquittal Just Because his Co-Conspirator was Acquitted.

The defendant argues that because he was prosecuted on a theory that he sold drugs that Wigenton supplied, and because Wigenton was acquitted, no rational trier of fact could have convicted the defendant of the conspiracy charge. His motion for acquittal was denied. We review the denial of a motion for judgment of acquittal under a sufficiency of the evidence standard. See United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992).

The result here is controlled by the case of United States v. Thomas, 900 F.2d 37 (4th Cir. 1990). There, a defendant argued that his conspiracy conviction had to be reversed because his co-defendant and alleged co-conspirator was acquitted. We rejected the common law "rule of consistency" that a defendant cannot be convicted of conspiracy where his co-conspirator is found innocent in the same trial. Id. at 40. We relied on numerous Supreme Court cases that "made it clear that a defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count." Id. We explained that:

> According to the Supreme Court, inconsistent verdicts "should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its

17

conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." This explanation applies equally as much to this case [of one conspirator convicted while the other is acquitted] . . . .

Id. (quoting United States v. Powell, 469 U.S. 57, 65 (1984)) (citation omitted). Protection against jury irrationality or error is provided by our independent review of the sufficiency of the evidence. See id.

The defendant's claim therefore fails under Thomas. The defendant does not contend that the evidence was insufficient to support his conviction, as numerous witnesses as well as a police officer with a video tape testified that Adams sold crack cocaine. The defendant's motion for acquittal was properly denied.

VIII. The Trial Court did not Err in its Determination of the Appropriate Sentencing Guideline Level for Adams.

The defendant challenges his sentence on multiple grounds. Findings of fact for sentencing are reviewed for clear error; the application of the Sentencing Guidelines to the facts is reviewed with deference; and legal interpretations are reviewed de novo . See United States v. Cutler, 36 F.3d 406, 407 (4th Cir. 1994).

First, the defendant challenges the amount of cocaine attributable to him. The district judge adopted the probation officer's calculations in the pre-sentence report, observing that the officer had "been conservative to a fault" in his estimations. Adams makes three main objections to the facts relied upon in the presentence report. These objections are meritless.

Second, the defendant objects to the use of hearsay in the presentence report. However, "[f]or sentencing purposes, hearsay alone can provide sufficiently reliable evidence of [the] quantity" of cocaine attributable to a defendant. United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992).

Third, Adams objects to the variation in the formula used to convert the amount of cocaine in grams from its value in dollars. But the

18

sentencing guidelines permit a district court to use street values to convert an amount of drugs in dollars to the equivalent amount in grams. In making this calculation, district courts may rely on fluctuating and transitory street values even though these methods are neither scientifically nor statistically precise. See id. In short, when the amount of drugs seized "does not reflect the scale of the offense, the district court may `approximate' the quantity to be used for sentencing." Id.

Fourth, the defendant objects to the use of a witness's testimony whom the defendant asserts was lying. But we must give due regard to the district court's opportunity to judge the credibility of the witnesses upon whom it relies and the court need only reach its approximation by a preponderance of the evidence. See id. at 1018. The defendant points to no evidence nor makes any argument that suggests that the district court's finding was clearly erroneous.

Finally, the defendant contests the two point enhancement given to his offense level under Sentencing Guideline § 4A1.1(d). That section provides that two points should be added if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or while escaped from some such sentence. The defendant was on twelve months unsupervised probation from February, 1993, to February, 1994. The judge added the two point enhancement because that probation period was within the time period alleged for the conspiracy.

The defendant argues that there was no evidence that he sold any cocaine during the particular period during which he was on probation. However, the district court concluded that it need not find that the defendant committed a discrete act in furtherance of the conspiracy while on probation in order to add the two points:

> It is sufficient that the defendant was a participant in that conspiracy during that period of time, which certainly overlapped the period of time when he was on unsupervised probation. Any other result would simply emasculate the whole concept of conspiracy, where each individual is responsible

19

for the reasonably foreseeable efforts of each other member of the conspiracy.

We agree that the defendant need not have committed a particular act in furtherance of the conspiracy during the time he was on probation in order to be eligible for the enhancement if the conspiracy, itself, was ongoing during that time. The crime of conspiracy does not require any particular criminal act. The defendant could have been convicted of the conspiracy had he never sold an ounce of cocaine himself. Because the conspiracy for which he was convicted took place while he was on probation, the enhancement for committing an offense while on probation applies.

The defendant's conviction and sentence are therefore

AFFIRMED.

20