**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5699

ALVIN STOTTS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Richard L. Williams, Senior District Judge.
(CR-95-89-A)

Argued: March 7, 1997

Decided: May 9, 1997

Before MURNAGHAN and LUTTIG, Circuit Judges, and
BLACK, Senior United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Luttig and Senior Judge Black concurred.

_____

**COUNSEL**

**ARGUED:** Joseph Stuart Lazarsky, Alexandria, Virginia, for Appel-
lant. Carol Mieyoung Lee, Special Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attor-
ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee.

**OPINION**

MURNAGHAN, Circuit Judge:

A federal jury convicted Defendant-Appellant Alvin Stotts of assaulting a correctional officer, in violation of D.C. Code Ann. § 22-505(a) (1996). Stotts appeals his conviction on the ground that the district court erred when it refused to give the self-defense jury instruction that Stotts requested. He also appeals his sentence on the ground that the district court erred when it granted the government's motion for a two-level upward sentencing adjustment pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.1 (1995). For the reasons stated below, we affirm.

I.

On January 18, 1995, Stotts was serving a sentence for a prior offense at the Lorton Reformatory Correctional Complex in Lorton, Virginia. On that day, the inmates were "on strike" to protest the denial of their recreational time, and several inmates had thrown trays and other garbage onto the tier area outside of their cells. The inmates assigned to clean up the area refused to do so. Two correctional officers, Corporals Leonard Nelson and Omie Gladden, began to clean up the area themselves. As they cleaned, an inmate hit them with a "milk bath," a mixture of milk and urine. The milk bath was thrown from a cell occupied by Reginald Jamison and Derrick Allen. Corporals Nelson and Gladden were then ordered off the tier until a supervisor arrived.

When the supervisor, Lieutenant Robert Graves, arrived, he ordered several officers to remove Jamison and Allen from their cell in order to separate them from the rest of the inmates. When Jamison and Allen refused to cooperate, the officers sprayed mace into the cell and forcibly removed them. Stotts and five other inmates testified that they saw the officers beat Jamison on the tier after they removed him from his cell. Stotts testified that two of the officers told Stotts, "you['re] next." Stotts then threw a milk bath containing a mixture of milk and feces at Sergeant Clarence Mack.

2

Lieutenant Graves, Sergeant Mack, and other correctional officers then ordered Stotts and his cellmate, Yousef Rabb, to place their hands outside their cell so that the officers could handcuff them. When Stotts and Rabb refused to do so, Lieutenant Graves ordered the officers to open the cell and remove them. The officers sprayed the cell with mace and then entered it. The testimony at trial conflicted as to what happened next. Sergeant Anthony Zienda testified that he grabbed Stotts around the waist and that Stotts hit him over the head with a milk crate. Lieutenant Graves testified that Zienda grabbed Rabb, not Stotts, and that Stotts then struck Sergeant Zienda with the milk crate. Corporal Harvey Woods testified that Zienda tripped and fell to the floor immediately after he entered the cell and that Zienda "didn't have a chance to tackle anybody." Stotts testified that he did not have a milk crate in his cell and that he did not assault any of the officers. A fellow inmate, Darrell Mayo, testified that after the officers removed Stotts and Rabb from their cell, he saw Lieutenant Graves throw a milk crate into the cell and then lock the cell back up. Sergeant Zienda later received fifteen to twenty stitches in his head as a result of the incident.

On February 21, 1995, a federal grand jury in the Eastern District of Virginia named Stotts in counts 1 and 4 of a four-count indictment. Count 1 charged Stotts with assault on a correctional officer with a deadly weapon, in violation of D.C. Code Ann. § 22-505(b), and count 4 charged Stotts with assault on a correctional officer, in violation of D.C. Code Ann. § 22-505(a).[1]  A jury trial commenced on May

---

[1] Section 22-505 provides in pertinent part:

> (a) Whoever without justifiable and excusable cause, assaults . . . any officer or employee of any penal or correctional institution of the District of Columbia . . . whether such institution . . . is located within the District of Columbia or elsewhere, while engaged in or on account of the performance of his or her official duties, shall be fined not more than $5,000 or imprisoned not more than 5 years, or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

> (b) Whoever in the commission of any such acts uses a deadly or dangerous weapon shall be imprisoned not more than 10 years.

D.C. Code Ann. § 22-505.

3

2, 1995. At the end of the trial, the district court instructed the jury on the justifications for use of force to resist a correctional officer under section 22-505. The district court denied Stotts's request for a standard self-defense instruction. On May 3, 1995, the jury convicted Stotts on count 1 of the lesser included offense of assault on a correctional officer, in violation of D.C. Code § 22-505(a). The jury acquitted him of the same charge in count 4.

The district court sentenced Stotts on August 22, 1995. The court imposed a two-level upward adjustment pursuant to U.S.S.G. § 3C1.1 for obstruction of justice on the ground that "Mr. Stotts falsely testified at trial." The court ultimately calculated Stotts's offense level at 23[2] and his criminal history category at VI, resulting in a guideline range of 92 to 115 months of imprisonment. However, since section 22-505 provides a maximum sentence of 60 months imprisonment, the district court only sentenced Stotts to 60 months.

## II.

Stotts first contends that the district court erred in denying his proposed self-defense jury instruction. We review a district court's denial of a requested jury instruction only for abuse of discretion. See United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992).

Stotts asked the district court to give a standard self-defense instruction.[3] We have held that a district court should give the instruc-

_____

[2] The base offense level for aggravated assault is 15. In addition to the two-level upward adjustment for obstruction of justice, the district court imposed a three-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(3)(D) because the victim sustained bodily injury and another three-level upward adjustment pursuant to U.S.S.G. § 3A1.2 because the victim was a law enforcement officer.

[3] Specifically, Stotts sought to charge the jury as follows:

> The defendant has offered evidence of having acted in self[-]defense. Use of force is justified when a person believes with good reason that it is necessary to use such force for the defense against immediate use of unlawful force against himself or others. The law recognizes the right of a person who is not the

4

tion that a criminal defendant requests as to any defense as long as the instruction: 1) has an evidentiary foundation; and 2) accurately states the law applicable to the charged offense. See United States v. Sloley, 19 F.3d 149, 153 (4th Cir. 1994); United States v. Dornhofer, 859 F.2d 1195, 1199 (4th Cir. 1988). Stotts argues only that he presented sufficient evidence to support his requested self-defense instruction. However, regardless of whether Stotts presented sufficient evidence of self-defense, his proposed instruction does not accurately state the law applicable to the charged offense.

Section 22-505(a) prohibits assaults on correctional officers undertaken "without justifiable and excusable cause." D.C. Code Ann. § 22-505(a). Section 22-505(a) further provides that "[i]t is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful." Id. Thus, a defendant generally cannot invoke self-defense to justify an assault on a police or correctional officer. See Robinson v. United States, 649 A.2d 584, 587 (D.C. 1994); Nelson v. United States, 580 A.2d 114, 117 (D.C. 1990). A standard self-defense instruction therefore does not apply to such cases.

_____

aggressor to stand his ground and use force to defend himself. That is to say the defendant has no duty to retreat and may stand his ground against unlawful force. The defendant may, however, use only such force as reasonably necessary to defend himself against the imminent use of unlawful force by another.

The question is: Would a reasonable person[,] faced with the same facts and circumstances which confronted the defendant at the time of their occurrence, have believed that he was in imminent danger of grievous bodily injury such that it was necessary for him to use in his defense in order to avoid such injury the force which it is alleged the defendant used[?]

The government has the burden of proving the defendant did not act in self[-]defense. For you to find the defendant guilty of Counts one and two, the government must prove that it was not reasonable for the defendant to think that it was necessary to defend himself against an immediate threat. If you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty.

5

However, a limited right of self-defense does arise if the defendant presents evidence that the officer used excessive force in carrying out his official duties. See Robinson, 649 A.2d at 587; Nelson, 580 A.2d at 117. A defendant who responds to an officer's use of excessive force with force reasonably necessary for self-protection under the circumstances has acted with "justifiable and excusable cause" and therefore does not violate section 22-505. See Robinson, 649 A.2d at 587; Nelson, 580 A.2d at 117. Thus, section 22-505 limits the self-defense right of a defendant who assaults a correctional officer to defense against excessive force only, and a jury charged with deciding whether a defendant's assault upon the officer was justified must be so instructed. See Speed v. United States, 562 A.2d 124, 127 (D.C. 1989). The court must, however, explicitly instruct the jury that the government bears the burden of disproving the defendant's limited claim of self-defense or justification beyond a reasonable doubt. Id. at 128.

The district court in the instant case properly instructed the jury in accordance with section 22-505. The court charged the jury as follows:

> If you find the Government has proven the elements of count one beyond a reasonable doubt, then you must consider whether the defendant acted with justifiable or excusable cause. This involves special rules that I will now explain to you.
>
> A Correctional Officer may stop or detain an inmate for a legitimate purpose, and the Correctional Officer may use the amount of force that appears reasonably necessary to make or maintain the stop. This is the amount of force that an ordinarily careful and intelligent person in the officer's position would think necessary.
>
> If the Correctional Officer uses only the force that appears reasonably necessary, the person stopped may not interfere with the Correctional Officer even if the stop later turns out to have been unlawful. If the person stopped does interfere, he acts without justifiable or excusable cause.

6

If the Correctional Officer uses more force than appears reasonably necessary, the person stopped may defend against the excessive force, using only the amount of force that appears reasonably necessary for his protection. But if that person uses more force than is reasonably necessary for protection, he acts without justifiable or excusable cause.

The Government must prove beyond a reasonable doubt that the defendant acted without justifiable or excusable cause.

If you find that the Government has proven beyond a reasonable doubt the elements of the offense and that the defendant acted without justifiable or excusable cause, then it is your duty to find the defendant guilty of assault with a dangerous weapon on a Correctional Officer.

If the Government has failed to prove beyond a reasonable doubt any of the elements of the offense or has failed to prove beyond a reasonable doubt that the defendant acted without justifiable or excusable cause, then you must find the defendant not guilty of assault with a dangerous weapon on a Correctional Officer.

The court's charge properly explains the limited exception to the general rule that a defendant cannot invoke self-defense to justify an assault on a correctional officer. Thus, since Stotts's proposed self-defense instruction did not accurately state the law of self-defense as it applies to an assault on a correctional officer under section 22-505, the district court did not abuse its discretion in denying the proposed charge.

III.

At sentencing, the district court imposed a two-level upward adjustment pursuant to U.S.S.G. § 3C1.1 on the ground that "Mr. Stotts falsely testified at trial." Stotts contends that the district court erred in imposing the adjustment because it did not make the specific factual findings that the Supreme Court requires.

7

Section 3C1.1 provides that the sentencing court may impose a two-level upward adjustment "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. In United States v. Dunnigan, 507 U.S. 87, 92-98 (1993), the Supreme Court held that the sentencing court may impose an adjustment pursuant to section 3C1.1 if it finds that the defendant committed perjury during the proceedings. A witness that testifies under oath or affirmation commits perjury if he: 1) gives false testimony; 2) concerning a material matter; 3) with the willful intent to deceive, rather than as a result of confusion or mistake. See id. at 94; United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995).

If the defendant objects to such an adjustment, the district court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition" set out above. See Dunnigan, 507 U.S. at 95. The district court should address each element of the alleged perjury in a separate finding. Id. However, the district court's decision to adjust the defendant's sentence will suffice as long as "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." Id.

In Dunnigan, the district court had stated:

> The court finds that the defendant was untruthful at trial with respect to material matters in this case.[B]y virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

Dunnigan, 507 U.S. at 95 (quoting district court opinion) (alteration in original). The Supreme Court concluded that the district court's finding sufficiently encompassed all of the factual predicates for a perjury finding, and the Court therefore affirmed the district court's adjustment. Id.

8

We applied <u>Dunnigan</u>'s holding in <u>United States v. Keith</u>, 42 F.3d 234 (4th Cir. 1994). In that case, we held that the district court's factual findings sufficed to justify an adjustment pursuant to section 3C1.1. <u>Id.</u> at 241. The district court had stated:

> I find with respect to the obstruction of justice that Mr. Keith was testifying under oath[,] that . . . he gave <u>false testimony concerning a material matter</u>, in particular the ownership of the car, . . . and that his testimony was given <u>with the willful intent to provide the false testimony</u> rather than as a result of any confusion or mistake or accident or a faulty memory[;] and therefore the two-point enhancement for obstruction of justice has been established by a preponderance of the evidence.

<u>Id.</u> at 240-41 (quoting district court opinion) (emphasis added) (alteration in original). We held that the district court's finding clearly complied with <u>Dunnigan</u>'s requirements, and we therefore affirmed the district court's judgment. <u>Id.</u>

In <u>United States v. Smith</u>, 62 F.3d 641 (4th Cir. 1995), however, we vacated the district court's upward adjustment pursuant to section 3C1.1. In that case, the district court asked the government to justify its requested section 3C1.1 adjustment. <u>Id.</u> at 647. In its response, the government argued that the defendant had perjured himself by denying any involvement in the offense at issue, by denying that he had confessed to the offense, and by denying that the cash that the police had seized was the proceeds of drug trafficking. <u>Id.</u> The district court then simply stated, "All right. Well, I will deny the objection to the increase for obstruction of justice." <u>Id.</u> (quoting district court).

On appeal, we held that the district court "did not comply with the Supreme Court's directive in <u>Dunnigan</u>." <u>Smith</u>, 62 F.3d at 647. Specifically, we held that the district court did not make specific findings as to the elements of perjury and that the court also did not make "a single global finding" that encompassed all three of the perjury elements. <u>Id.</u> We further held that we "join[ed] other circuits that have declined to infer such findings when they were not made with the specificity stated in <u>Dunnigan</u>." <u>Id.</u> at 647-48. We therefore remanded for resentencing. <u>Id.</u>

9

In the instant case, Stotts objected to the section 3C1.1 adjustment at sentencing. The district court simply stated that"Mr. Stotts falsely testified at trial and, therefore, the offense level is increased by two levels pursuant of Section 3C1.1." Thus, the district court clearly did not address each element of Stotts's alleged perjury in a separate finding. Nor did the court's limited finding "encompass[ ] all of the factual predicates for a finding of perjury." Dunnigan, 507 U.S. at 95. The court's finding encompassed only the first factual predicate for a perjury finding, namely, that Stotts gave false testimony. The district court did not specify the testimony in question, did not address whether the testimony related to a material matter, and did not address whether Stotts willfully intended to give false testimony or whether the false testimony resulted from confusion or mistake.

The government seems to concede that the district court did not make sufficient factual findings at the sentencing hearing. The government points, however, to statements that the district court judge made in a sidebar during the trial. Stotts testified in his own defense at trial. During cross-examination, the prosecutor asked Stotts whether he had told the correctional officers attempting to remove him from his cell that he "had assaulted [Vince] Morehead in Dormitory 6." In response, Stotts claimed that he had not assaulted anyone and that he did not even know Morehead. The government then sought to introduce a disciplinary report regarding an assault by Stotts on Morehead. During a sidebar to discuss Stotts's objections, the following exchange took place:

> [DEFENSE COUNSEL]: . . . My client has answered he doesn't know Morehead, he didn't do this.
>
> THE COURT: He's flat-out lied.
>
> [DEFENSE COUNSEL]: He's not lying, Your Honor.
>
> THE COURT: But when he flat-out lies, it opens all sorts of things. I warned you early on that I was going to keep all this sort of stuff out. But when you put him on, you obviously risked enhancing any penalty that he gets by two points for obstruction of justice. Anytime you get on the

10

> stand and lie, the system demands that you are exposed. He has lied, it's open season on him.

The government claims that the court's statement during the sidebar suggests that the court found that Stotts intentionally testified falsely because a "flat-out lie" is not the result of confusion or mistake. However, the district court did not specify at the sentencing hearing that its finding that Stotts "falsely testified at trial" referred to the incident quoted above. Moreover, the court's sidebar statements hardly seem to constitute the "independent findings necessary to establish a willful impediment to, or obstruction of, justice" that the district court must make after "review[ing] the evidence." See Dunnigan, 507 U.S. at 95. Furthermore, even if we could consider the district court's trial statements, the district court still failed to address whether Stotts's false testimony concerned a material matter. At most, the court's trial statements only addressed Stotts's willful intent.

Thus, since the district court failed to make the factual findings necessary to support an adjustment pursuant to section 3C1.1, we would ordinarily vacate the adjustment and remand to the district court for resentencing. However, section 22-505(a), the statute that the jury convicted Stotts of violating, provides a maximum term of imprisonment of 60 months. See D.C. Code Ann. § 22-505(a). Consequently, the district court sentenced Stotts to a 60 month term of imprisonment. Even if the district court declined to impose the section 3C1.1 upward adjustment on remand, Stotts's guideline range would still exceed the statutory maximum of 60 months. [4] The sentencing guidelines clearly provide that when the statutorily authorized maximum sentence is less than the minimum of the guideline range, the district court must defer to the statutory maximum. See U.S.S.G. § 5G1.1(a). Thus, since the statutory maximum would constrain the district court to provide the same sentence on remand, we hold that the district court's error in imposing the section 3C1.1 adjustment was harmless.

_____

[4] Without the two-level section 3C1.1 upward adjustment, Stotts would face a guideline range of 77 to 96 months of imprisonment.

11

IV.

Accordingly, Stotts's conviction and sentence are

AFFIRMED.

12