**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5205**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRIAN S. RANALDSON,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., District Judge.  (2:07-cr-00168-1)

Argued:  May 11, 2010                    Decided:  June 29, 2010

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** David O. Schles, LAW OFFICE OF DAVID SCHLES, Charleston, West Virginia, for Appellant.  Monica Lynn Dillon, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from a conviction and sentence for assaulting a person executing a federal search warrant in violation of 18 U.S.C. § 2231(a). The appellant challenges the district court's decisions denying a motion to suppress, denying a motion to sever offenses, refusing to instruct the jury about self-defense, denying a motion for acquittal or a new trial, and calculating his applicable sentencing range under federal sentencing guidelines. For the reasons that follow, we affirm.

I.

A.

On August 3, 2007, West Virginia State Troopers assembled to execute a federal search warrant at the Red Roof Inn motel in Charleston, West Virginia. Trooper Andy Purdue had obtained the warrant following a controlled purchase of cocaine base from Sean Holloway in Room 209. Once the police officers assembled outside Room 209, Sergeant Ronald Arthur tapped the door with a battering ram and yelled "State Police, search warrant." J.A. 29. After waiting a few moments, they tried to enter using a key card provided by the manager, but a deadbolt lock prevented them from doing so. The officers then rammed the door repeatedly but still could not enter. They finally broke the

2

window beside the door and called out, "State Police, open the door."  J.A. 70.

When the door opened from the inside, Sergeant Michael Oglesby entered and found Appellant Brian Ranaldson displaying his hands and lying on the floor several feet from the door. Noticing the bathroom door close, Oglesby announced that someone was there and, stepping over Ranaldson, proceeded directly to the bathroom.  There he discovered Holloway.  Oglesby searched Holloway for weapons, laid him outside the bathroom, and secured his hands using flexible restraints.

Arthur entered immediately after Oglesby and began surveying the room for weapons.  When Arthur drew near, Ranaldson seized him by the legs and pulled hard.  Arthur and Ranaldson then struggled feverishly, striking each other repeatedly with fists and knees, and becoming locked in a bear hug.  Sergeant Robert Medford and the canine handler intervened, but Ranaldson continued fighting even after the police dog bit him.  Oglesby soon realized that Arthur needed help and, "being a bear of a man, six-feet-three, 275 pounds," came and tackled everybody to the floor.  J.A. 118.

Once knocked over, Ranaldson stopped struggling and the officers finally managed to secure his hands using flexible restraints.  The officers then hoisted him onto a chair.  After calming down, Ranaldson stated, "I'm sorry for fighting you,"

3

J.A. 39, and explained, "I don't know what I was thinking," J.A. 74. Upon searching the motel room, the officers discovered marijuana, cocaine base, digital scales, and the cash that had been used for the controlled purchase.

## B.

On August 6, 2007, Ranaldson and Holloway were charged by criminal complaint with conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846 (count 1), and aiding and abetting possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) (count 2). Holloway later entered a plea agreement and pleaded guilty to count 2.

Ranaldson moved to suppress his statements and all seized evidence on the ground that the officers used excessive force. During a hearing on the motion, Ranaldson testified that he had not resisted, but that the officers nonetheless struck him repeatedly and allowed the police dog to bite him. Ranaldson stated that when they entered the motel room Oglesby stepped on his face and Arthur kicked him lying down, causing him to black out. Ranaldson added that, upon regaining consciousness, he found himself stripped almost naked and heard Holloway say that the officers had beaten him severely. Regarding his injuries, Ranaldson explained, "my whole face was swollen like I was in a

boxing match," "both of my knees . . . had glass contusions all around them and on them," "a piece of my thigh was just literally hanging down from a dog bite, and I got two teeth marks on the side of my thigh of just a dog gripping in on my leg." J.A. 89.

Arthur and Oglesby also testified during the suppression hearing. Arthur testified that Ranaldson grabbed his legs, tried to pull him down, and then fought desperately until Oglesby intervened. Arthur stated that he first struck Ranaldson only when Ranaldson almost grabbed Arthur's holstered handgun. Arthur also stated that Ranaldson grabbed Medford's rifle by the magazine (containing cartridges that are fed into the gun chamber) but that part detached from the weapon. Describing Ranaldson's intensity, Arthur stated that "his eyes glazed over" and "at that point he became where I felt like I was fighting for my life." J.A. 35. Arthur also explained why force had been necessary: "It seemed like everything we did, instead of getting compliance, the fight got more intensified and he seemed to get stronger and more dangerous. . . . He never did give in and just let us take him into custody." J.A. 38. Corroborating this account, Oglesby testified to rushing to help Arthur and Medford upon seeing "Ranaldson literally pick those two guys up as he returned to his feet." J.A. 72-73.

On December 3, 2007, after hearing the evidence, the district court denied Ranaldson's motion to suppress. The court found that "[t]he steps that the officers took with increasing intensity as their effort to gain entry proceeded [were] entirely reasonable and [were] commensurate with the needs of the moment." J.A. 119.

## C.

On December 11, 2007, the government filed a superseding indictment against Ranaldson. In addition to counts 1 and 2, the indictment included another count for assaulting a person executing a federal search warrant in violation of 18 U.S.C. § 2231(a) (count 3). Specifically, the government alleged that Ranaldson "did unlawfully and forcibly assault and resist, oppose, impede, and interfere with West Virginia State Police Sgt. Ronald D. Arthur, a person authorized to execute search warrants, while he was engaged in the performance of executing a federal search warrant." J.A. 126.

On January 9, 2008, Ranaldson moved to sever count 3 from counts 1 and 2 under Federal Rule of Criminal Procedure 14.[1] He

---

[1] Rule 14 provides in relevant part: "If the joinder of offenses . . . in an indictment . . . appears to prejudice a (Continued)

6

argued that joining the offenses prejudiced him because he wanted to testify regarding count 3 but exercise his Fifth Amendment privilege regarding counts 1 and 2. The district court denied this motion, reasoning that count 3 implicated counts 1 and 2, and that evidence admissible regarding counts 1 and 2 was also admissible regarding count 3, and vice versa.

On January 29, 2009, the case proceeded to trial by jury. Although Ranaldson did not take the stand, Holloway testified about what he had observed:

> From what I seen, Brian [Ranaldson] looked like he was unconscious. So, I mean, I don't know what had happened before when I was in the bathroom, but when I came out, when I seen him, he was laying on the floor. There was like a dude in front of him. I don't know if he was choking him or not, but it looked like he was choking him to me. And there was another officer over there with a dog and they put me on the floor. When they put me on the floor, I'm trying to look forward. One of the officers put like a hat in front of my face, so I couldn't see what was going on. I pulled my head to the right and I seen a little bit, but I really -- I really couldn't tell what was all going on.

J.A. 164. Holloway later reiterated, "It looked like one [officer] was choking him [Ranaldson] and it looked like the other one was just standing there," J.A. 176, and also stated,

---

defendant . . . the court may order separate trials of counts." Fed. R. Crim. P. 14(a).

7

"I guess as soon as they noticed I could see, they put a hat like in front of me, in front of my face," J.A. 177. Based upon this testimony, Ranaldson requested a jury instruction about self-defense regarding count 3. The district court denied this request, however, reasoning that "there [was] a lack of evidentiary support." J.A. 366.

After presenting its evidence, the government sought judicial notice that "West Virginia state troopers are authorized by law to serve federal search warrants." J.A. 333. The district court then found "as a matter of law that the first of the three elements of the assault offense in count three [wa]s and ha[d] been established; that being that on August 3, 2007, West Virginia State Police Sergeant Ronald D. Arthur was a person authorized to execute the federal search warrant in this case." J.A. 371. The court later instructed the jury as follows: "I notice and note to you now that as to that first element, the court has found as a matter of law that Sergeant Arthur was at that time a person authorized to execute the federal search warrant in this case." J.A. 373.

The jury convicted Ranaldson on count 3 and acquitted him on counts 1 and 2. He timely moved for acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33. Ranaldson argued that, even if West Virginia State Troopers are authorized by law to execute federal search warrants, the jury instruction

about count 3's first element erroneously prevented the jury from determining whether Arthur was a West Virginia State Trooper during the August 3, 2007, search. Although agreeing with this argument and acknowledging the error, the district court found this error harmless and denied the motion.

Ranaldson was sentenced on November 19, 2008. Under federal sentencing guidelines, the district court determined that a base offense level of 14 using section 2A2.2's "aggravated assault" offense guideline was appropriate because Ranaldson had assaulted Arthur while trying to disarm Medford. The court added 3 levels under section 2A2.2(b)(3) upon finding that Arthur suffered bodily injury, 6 levels under section 3A1.2's "official victim" enhancement upon finding that Ranaldson attacked due to Arthur's search warrant, and 2 levels under section 3C1.1's "obstruction of justice" enhancement upon finding that Ranaldson lied during the suppression hearing. The court also refused to reduce Ranaldson's offense level for acceptance of responsibility under section 3E1.1. Given Ranaldson's criminal history category of II, the court calculated a sentencing range of 63 to 78 months using section 5A's sentencing table. Because the crime of assaulting a person executing a federal search warrant under 18 U.S.C. § 2231(a) carries a maximum penalty of three years, however, the court determined that Ranaldson's guideline sentence became 36 months

pursuant to section 5G1.1.  Ultimately, the court sentenced Ranaldson to the statutory maximum of three years imprisonment.  This appeal followed.

## II.

Ranaldson now challenges the decisions below regarding (1) his motion to suppress, (2) his motion to sever offenses, (3) his request for a jury instruction about self-defense, (4) his motion for acquittal or a new trial, and (5) his applicable sentencing range.  We address each matter in turn.

## A.

We first consider the district court's denial of Ranaldson's motion to suppress his apology and all evidence seized during the search on August 3, 2007.  "In assessing a trial court's ruling on a motion to suppress, we review factual findings for clear error and legal determinations de novo."  United States v. Green, 599 F.3d 360, 375 (4th Cir. 2010).  Under the clear-error standard, "[a] factual finding by the district court may be reversed only if, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Walton v. Johnson, 440 F.3d 160, 173-74 (4th Cir. 2006) (en banc) (quoting United States v. U.S.

10

Gypsum Co., 333 U.S. 364, 395 (1948)); see United States v. Harvey, 532 F.3d 326, 336-37 (4th Cir. 2008) (same). "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" Walker v. Kelly, 589 F.3d 127, 141 (4th Cir. 2009) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985)).

Ranaldson asserts that the district court's denial of his motion to suppress should be reversed because the court's finding that the officers used reasonable force is clearly erroneous. We disagree. Because the district court was presented with contradictory accounts of what happened, Ranaldson's argument about excessive force depended primarily upon a determination of witness credibility.[2] "[W]hen a district court's factual finding is based upon assessments of witness credibility, such finding is deserving of the highest degree of appellate deference." United States v. Thompson, 554 F.3d 450, 452 (4th Cir. 2009) (internal quotations omitted). Given our

_____

[2] Ranaldson conceded this below. See J.A. 114 ("On the issue of excessive force, no question, the court has factual conflict in testimony to resolve. . . . I agree with the U.S. Attorney, the defendant's testimony is directly contradictory to the police officers, and cannot be reconciled. The court will have to make a credibility determination on that."); J.A. 134-35 (noting that "[i]t's simply a credibility issue" because "the only conceivable evidence as to what transpired in that motel room is direct testimony from people who were there").

11

deferential standard of review, we see no compelling reason to disturb the district court's finding that the officers used reasonable force. The finding was supported by credible evidence that Ranaldson initiated the altercation with Arthur, fought desperately despite increasingly forceful attempts to secure and arrest him, and posed a considerable threat to the officers' safety -- e.g., nearly seizing Medford's rifle. The finding was also supported by Ranaldson's spontaneous admission, "I'm sorry for fighting you." J.A. 39. For these reasons, we conclude that the district court's finding that the officers used reasonable force is not clearly erroneous, and we therefore affirm the denial of Ranaldson's motion to suppress.[3]

B.

We next consider the district court's denial of Ranaldson's motion to sever count 3 from counts 1 and 2 under Rule 14. We review "refusal to sever for abuse of discretion." United

---

[3] Ranaldson also asserts that his motion to suppress should have been granted because the officers violated the "knock-and-announce" rule. Because the Supreme Court declared the exclusionary rule inapplicable to "knock-and-announce" violations, Hudson v. Michigan, 547 U.S. 586 (2006), we find this argument unavailing, see Appellant's Br. at 14-15 ("Defendant concedes that Hudson . . . states that a violation of the 'knock and announce' rule standing alone is not sufficient grounds for suppression.").

States v. Montgomery, 262 F.3d 233, 244 (4th Cir. 2001); see Zafiro v. United States, 506 U.S. 534, 541 (1993) ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts.").

Federal Rule of Criminal Procedure 8 provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 14 provides, however, that "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts." Fed. R. Crim. P. 14(a). Under Rule 14, "[t]he party seeking severance bears the burden of demonstrating a strong showing of prejudice." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008) (internal quotations omitted).

Ranaldson maintains that joinder of count 3 with counts 1 and 2 under Rule 8 prejudiced him because he wanted to testify regarding count 3 but assert his Fifth Amendment privilege regarding counts 1 and 2. We previously articulated legal principles governing this argument as follows:

13

> [B]ecause of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma; whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would result from testifying on the other. Obviously no such dilemma exists where the balance of risk and advantage in respect of testifying is substantially the same as to each count. Thus . . . no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information -- regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other -- to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984) (quoting Baker v. United States, 401 F.2d 958, 976-77 (D.C. Cir. 1968) (internal quotations omitted)); see United States v. Jamar, 561 F.2d 1103, 1108 n.9 (4th Cir. 1977) (indicating that Baker, quoted wholesale by Goldman, "does not require a severance every time a defendant merely alleges that he wishes to offer limited testimony," but instead "a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make an independent

14

evaluation of whether the defendant will be prejudiced to an extent that outweighs the interests favoring joinder").

Ranaldson explained below that he wished to testify regarding count 3 because he hoped to establish the legal justification of self-defense. Regarding why he wished to remain silent regarding counts 1 and 2, Ranaldson said only that

> [h]e would be subject to cross-examination as to the nature, extent, and duration of his relationship with Mr. Holloway, who was his initial codefendant who has now pled guilty and is expected to testify against him; the circumstances surrounding his travel from Ohio to Charleston, West Virginia; his whereabouts and activities during his [sic] period that he was in Charleston, West Virginia; [and] the events leading up to the very moment when the police entered the motel room.

J.A. 135-36. The district court correctly noted, however, that evidence regarding counts 1 and 2 would be admissible during a trial solely on count 3. Evidence that Ranaldson helped Holloway sell cocaine base, for instance, would be admissible to show (1) why Arthur had arrived with a federal search warrant issued following a controlled purchase of cocaine base and (2) that Ranaldson had wanted to delay the officers' search to give Holloway the chance to destroy contraband.[4] Ranaldson

---

[4] Ranaldson appears to have conceded the second example. See J.A. 138 (arguing that the alleged drug conspiracy does not encompass Ranaldson's alleged assault, but admitting that (Continued)

15

accordingly offered no valid reason for wishing to assert his Fifth Amendment privilege regarding counts 1 and 2. Furthermore, all three counts were logically related because they involved similar evidence and centered around the same August 3, 2007, search.  See United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008) (affirming denial of severance because "[t]rying the . . . charge[s] separately would have led to significant inconvenience for the government and its witnesses, and required a needless duplication of judicial effort in light of the legal, factual, and logistical relationship between the charges").  For these reasons, we conclude that the district court did not abuse its discretion and therefore affirm the denial of Ranaldson's motion for severance under Rule 14.

C.

We next consider Ranaldson's denied request for a jury instruction about self-defense.  "We review the district court's decision to give or refuse to give a jury instruction for abuse of discretion."  United States v. Passaro, 577 F.3d 207, 221

---

"certainly they [the government] are entitled, I believe, to make the argument that in their opinion it goes to motive").

16

(4th Cir. 2009). "[A] district court should give the instruction that a criminal defendant requests as to any defense as long as the instruction: 1) has an evidentiary foundation; and 2) accurately states the law applicable to the charged offense." United States v. Stotts, 113 F.3d 493, 496 (4th Cir. 1997). "A district court commits reversible error in refusing to provide a proffered jury instruction only when the instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." Passaro, 577 F.3d at 221 (internal quotations omitted).

Ranaldson argues that the district court abused its discretion by refusing to instruct the jury about self-defense because trial testimony provided a sufficient evidentiary foundation for the instruction. Assuming that the doctrine of self-defense applies to assaulting a person executing a federal search warrant under 18 U.S.C. § 2231(a),[5] we have recognized

---

[5] In United States v. Gore, 592 F.3d 489 (4th Cir. 2010), we considered whether common-law self-defense was available even though the relevant federal criminal statute contained no language providing for any affirmative defense. Neither party
(Continued)

17

that this doctrine has limited applicability where police officers are involved:

> [A] defendant generally cannot invoke self-defense to justify an assault on a police or correctional officer. A standard self-defense instruction therefore does not apply to such cases. However, a limited right of self-defense does arise if the defendant presents evidence that the officer used excessive force in carrying out his official duties. A defendant who responds to an officer's use of excessive force with force reasonably necessary for self-protection under the circumstances has acted with justifiable and excusable cause . . . .

Stotts, 113 F.3d at 496 (internal quotations and citations omitted). Regarding whether "excessive force" was used, we have explained that "[t]he test for whether force employed to effect a seizure is excessive is one of '"objective reasonableness" under the circumstances.'" Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 399 (1989)). "Because 'police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and

---

raised that issue in this case, and because we affirm on other grounds, we do not consider it.

18

the use of hindsight must be avoided." Id. at 476-77 (quoting Graham, 490 U.S. at 397).

Ranaldson argues that Holloway's testimony provided a sufficient evidentiary foundation for a jury instruction about self-defense because Holloway stated, "It looked like one [officer] was choking him [Ranaldson] and it looked like the other one was just standing there," J.A. 176, and also stated, "I guess as soon as they noticed I could see, they put a hat like in front of me, in front of my face." J.A. 176-77. These statements alone are insufficient to establish self-defense because, although they describe the officers' conduct, the statements reveal nothing about whether Ranaldson responded "with force reasonably necessary for self-protection." Stotts, 113 F.3d at 496. Holloway also admitted, "I don't know what had happened before when I was in the bathroom," "I don't know if he was choking him or not," and "I really couldn't tell what was all going on." J.A. 164. For these reasons, the district court did not abuse its discretion by not instructing the jury about self-defense. We therefore affirm this decision.

19

D.

We next consider the district court's denial of Ranaldson's motion for acquittal under Rule 29 or a new trial under Rule 33.[6] "We review de novo a district court's denial of a Rule 29 motion for judgment of acquittal," United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005), but "[w]e review for abuse of discretion a district court's denial of a [Rule 33] motion . . . for a new trial," United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). With regard to Rule 29, "we are obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the Government, it is supported by 'substantial evidence,'" meaning "'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Alerre, 430 F.3d at 693 (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). With regard to Rule 33, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in

---

[6] Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). And Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

the rare circumstance when the evidence weighs heavily against it."  Smith, 451 F.3d at 217 (internal quotations omitted).

Ranaldson challenges the district court's determination that its erroneous jury instruction regarding count 3 was harmless error.  For the offense of assaulting a person executing a federal search warrant under 18 U.S.C. § 2231(a), the government had to prove three elements: (1) that on August 3, 2007, Arthur was authorized to execute a federal search warrant; (2) that Ranaldson "did unlawfully and forcibly assault or resist, oppose, impede, or interfere" with Arthur; and (3) that Ranaldson did this while Arthur was executing a federal search warrant.  J.A. 373.  Having concluded that all West Virginia State Troopers are authorized to execute federal search warrants, the district court instructed the jury that the first element was established: "I notice and note to you now that as to that first element, the court has found as a matter of law that Sergeant Arthur was at that time a person authorized to execute the federal search warrant in this case."  J.A. 373. The court later admitted that this was error because, although any West Virginia State Trooper may have had authority to execute the search warrant, the jury should have been required to determine whether Arthur was a West Virginia State Trooper on

21

August 3, 2007.[7]  Regardless, the court denied Ranaldson's motion for acquittal or a new trial upon concluding that the error was harmless.

The district court's determination of harmlessness was based upon our precedent United States v. Lovern, 293 F.3d 695 (4th Cir. 2002).  There, the defendant was charged under 26 U.S.C. § 7212(a) with intimidating a federal employee acting in his official capacity under Title 26.  The district court instructed the jury that the employee whom the defendant allegedly threatened "was acting in the scope of his official duties under Title 26 during the . . . conversation."  Id. at 699.  Because this established an essential element of the charged offense, we found that giving this instruction was constitutional error.  See United States v. Gaudin, 515 U.S. 506, 510 (1995) (noting that the Fifth Amendment Due Process

---

[7] Ranaldson maintains that the jury should have also been required to determine whether West Virginia State Troopers are authorized by law to execute federal search warrants.  The district court ruled that Congress had granted them such authority pursuant to 18 U.S.C. § 3105 and W. Va. Code § 15-2-12.  Because this was purely a legal question, see Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009) (considering statutory interpretation "a quintessential question of law"), the court did not err by deciding it for the jury, see Dimick v. Schiedt, 293 U.S. 474, 486 (1935) ("The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts.").

Clause and the Sixth Amendment jury trial guarantee "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). We found this error harmless, however, because although the defendant "contested the element's not being submitted to the jury, he did not 'raise[] evidence sufficient to support a contrary finding . . .' to that reached by the judge." Lovern, 293 F.3d at 701 (quoting Neder v. United States, 527 U.S. 1, 19 (1999)) (alterations in original).

Under Lovern, we should assess harmlessness here by considering whether Ranaldson offered sufficient evidence during trial to establish that Arthur had not been a West Virginia State Trooper during the August 3, 2007, search. We conclude that he did not.

Arthur wore his police uniform during trial and testified that he had been employed by the West Virginia State Police Department for the last 13 years. The evidence also showed that Arthur conducted himself as a West Virginia State Trooper during the August 3, 2007, search. More importantly, Ranaldson offered no evidence to the contrary. Indeed, defense counsel frequently called Arthur "Sergeant Arthur," J.A. 270, and conceded during oral argument that Arthur was indeed a West Virginia State Trooper on August 3, 2007. For these reasons, we agree that the

erroneous jury instruction about count 3 was harmless. We therefore affirm the district court's denial of Ranaldson's motion for acquittal under Rule 29 or a new trial under Rule 33.

E.

We finally turn to several challenges that Ranaldson brings regarding the district court's application of federal sentencing guidelines. "In considering challenges to a sentencing court's application of the Guidelines, we review factual determinations for clear error and legal issues de novo." Elliot v. United States, 332 F.3d 753, 761 (4th Cir. 2003).

First, Ranaldson argues that his offense of conviction should have been deemed a "minor assault" under section 2A2.3 rather than an "aggravated assault" under section 2A2.2. According to relevant commentary, "'[a]ggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." USSG § 2A2.2 application note 1. The district court reasoned that Ranaldson's assault involved "intent to commit another felony" because Ranaldson tried to seize Medford's rifle during the struggle and West Virginia law provides that "[a]ny person who intentionally . . . attempts to disarm any law-enforcement officer acting in his or her official

24

capacity, is guilty of a felony." W. Va. Code § 61-5-17(b). We find no error here and Ranaldson provides no guidance about how the court might have been incorrect.[8] We therefore affirm the district court's finding that Ranaldson's offense of conviction was an "aggravated assault" under section 2A2.2.

Second, Ranaldson argues that the district court should not have applied the specific offense characteristic of section 2A2.2(b)(3)(A), namely, that the victim suffered "bodily injury." According to relevant commentary, "'[b]odily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1 application note 1(B); see USSG § 2A2.2 application note 1. The district court reasoned that Arthur suffered "significant injury" under that standard because Ranaldson's punches caused him to spit out blood and chip a tooth. The court further noted that Arthur also received various bumps and bruises. Ranaldson concedes these factual findings but concludes without explanation that Arthur's injuries were insufficiently serious. We find this argument unpersuasive and thus affirm the district court's

---

[8] Ranaldson's only argument here misconstrues the district court's reasoning. See Appellant's Br. at 49-50.

conclusion that Arthur suffered "bodily injury" under section 2A2.2(b)(3)(A).

Third, Ranaldson argues that the district court should not have applied the "official victim" enhancement under section 3A1.2. The enhancement applies "[i]f (1) the victim was . . . a government officer or employee . . . and (2) the offense of conviction was motivated by such status." USSG § 3A1.2(a). The district court applied the enhancement upon finding that "the defendant engaged in the assault against the officers in order to interfere with the official investigation of the drug offense, that is, to give Holloway time to flush the drugs." J.A. 478. Given the record evidence already discussed, we cannot find clear error here and thus affirm the court's decision to apply the "official victim" enhancement under section 3A1.2.[9]

Finally, Ranaldson argues that the district court erred by not reducing his offense level under section 3E1.1 for acceptance of responsibility. The court refused because

---

[9] Ranaldson also argues that the district court erred by applying the "obstruction of justice" enhancement of section 3C1.1 after finding that Ranaldson had lied during the suppression hearing in denying the police officers' allegations. Other than insisting upon his innocence, Ranaldson gives no reason why this factual finding was clearly erroneous. We thus affirm the court's decision.

Ranaldson had declined to plead guilty. Such reasoning accords with the relevant commentary: "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG § 3E1.1 application note 2. The court's finding that Ranaldson falsely denied conduct relevant to the offense also supports refusing to apply section 3E1.1. See Elliot, 332 F.3d at 766 (affirming denial of adjustment for acceptance of responsibility under section 3E1.1 because the defendant "did falsely deny certain aspects of her relevant conduct" (emphasis omitted)). We therefore affirm the district court's refusal to reduce Ranaldson's offense level under section 3E1.1 for acceptance of responsibility.

III.

For the reasons stated above, we

AFFIRM.

27